Shakiya **STURGIS** a/n/f of Darnaya **STURGIS**, Plaintiff Below, Appellant

v.

**BAYSIDE HEALTH ASSOCIATION CHARTERED** and **Mackie Banks, C.N.M.**, Defendants Below, Appellees.

**No. 146, 2007.**

Supreme Court of Delaware.

Submitted: Nov. 14, 2007.

Decided: Dec. 26, 2007.

---

**41.** *Id.* at 582.

**42.** D.R.E. 702; *see New Jersey v. B.H.*, 183 N.J. 171, 870 A.2d 273, 287–91 (2005).

**43.** *See Van Arsdall v. State*, 524 A.2d 3, 10 (Del.1987).

Kenneth M. Roseman, Kenneth Roseman, P.A., Wilmington, DE, for plaintiff below appellant.

Mason E. Turner, Jr., Prickett, Jones & Elliott, Wilmington, DE, for defendant below Bayside Health Association Chartered.

Gilbert F. Shelsby, Jr., Shelsby & Leoni P.A., Stanton, DE, for defendant below Mackie Banks, C.N.M.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

STEELE, Chief Justice:

Shakiya Sturgis, as next friend of Darnaya Sturgis, appellant, alleged that nurse-midwife, appellee Mackie Banks,[1] along with other non-party assistants negligently delivered and injured Darnaya with excess traction (*i.e.* pulling on the baby's head) in January 2002. After a jury trial, the jury found for the defendants. Sturgis's appeal focuses on two pretrial rulings on two motions *in limine* by Sturgis and by the defendants. In the first motion, Sturgis asked the trial judge to bar the defendants' expert from testifying that Darnaya's injury could have occurred under three circumstances—in utero, in the birth canal, and by excess traction. The trial judge ruled that the defense expert could testify that two reasonably certain causes

of Darnaya's injury existed—in utero and by excess traction. Based on that ruling by the trial judge, Sturgis's expert then sought to opine that in utero and by excess traction were the *only* two possible causes of Darnaya's injury. In the second motion *in limine*, the defendants moved to bar Sturgis's expert from testifying that they were the *only* two possible causes. The defendants argued that other, unknown, causes of Darnaya's injury were possible. The trial judge ruled that, even though only two reasonably certain causes exist for expert testimony purposes, other less certain and potential causes of Darnaya's did exist. Thus, the trial judge barred Sturgis's expert from testifying that in utero and excess traction were the *only* two possible causes of Darnaya's injury.

Sturgis argues on appeal that the trial judge improperly limited her expert's testimony about the *only* two possible causes of Darnaya's injury. However, Sturgis never introduced any scientific evidence that supported her expert's opinion that in utero and the use of excess traction were the *only* two causes. Sturgis cannot simply rely on the trial judge's ruling that limited the defendants' expert testimony. In order for her expert to testify that there are only two possible causes of Darnaya's injury, that expert must have proffered reliable verifiable scientific evidence supporting the claim that in utero and the use of excess traction were the *only* two possible causes of her injury. In the absence of any evidence supporting that theory, the trial judge properly excluded Sturgis's expert's testimony. Therefore, we **AFFIRM.**

### FACTS

Shakiya gave birth to Darnaya in January 2002. During delivery, some unex-

---

pected complications arose. As nurse-midwife Banks attempted to deliver Darnaya, Banks discovered that one of Darnaya's shoulders lodged against her mother's pubic bone, a complication known as shoulder dystocia. This rare complication jeopardized Darnaya's life. If Banks did not deliver Darnaya within five to seven minutes, Darnaya would be deprived of oxygen for a long enough period of time to damage her vital organs.

Although Banks needed to act quickly, she still needed to proceed with great care. In order to free Darnaya for delivery, Banks needed to ensure that she did not apply undue force, known as excess traction, on Darnaya's head. If the nurse-midwife applied excess traction, she might separate the nerves in Darnaya's shoulder and cause a brachial plexus injury. A brachial plexus injury could potentially limit Darnaya's use of her arm for the rest of her life.

To reduce excess traction, obstetricians have developed a number of procedures to dislodge the baby from the pubic bone for delivery and to minimize the likelihood of a brachial plexus injury. According to the medical literature, when the nurse-midwife discovers shoulder dystocia, she could apply suprapubic pressure, i.e. push above the mother's pubic bone, in an attempt to dislodge the baby without pulling on her head. The nurse-midwife might follow that by performing the McRoberts maneuver, where, with the help of an assistant, the nurse-midwife positions the mother's legs to maximize the potential opening for the baby to pass through. Finally, the nurse-midwife could apply the Woods corkscrew maneuver to reposition the baby and potentially free her for delivery. These procedures attempt to eliminate excessive traction or pressure on the baby's head and limit the possibility of a brachial plexus injury.

After Darnaya's delivery, her mother, Shakiya, discovered that Darnaya had suffered a brachial plexus injury. Shakiya, as next friend of Darnaya, sued the hospital and Brown and alleged that Brown had negligently breached her duty of care by applying excess traction on Darnaya's head during delivery.

Both plaintiff and defendants sought to introduce expert testimony on the delivery of Darnaya and brachial plexus injuries.

The defendants' expert, Dr. Johnson, sought to opine that brachial plexus injuries could occur under three circumstances. Dr. Johnson, in her deposition, testified that brachial plexus injuries could occur (1) in utero, (2) during the descent through the birth canal, or (3) during delivery. Dr. Johnson also testified at her deposition that she ruled out any possibility of an in utero brachial plexus injury in this case. Darnaya's attorney filed a motion *in limine* to preclude Dr. Johnson from testifying at trial that brachial plexus injuries could occur during the descent through the birth canal.

The plaintiff's expert witness, Dr. Mollick, sought to testify that *only* two possible cause of brachial plexus injuries exist, (1) in utero and (2) as a result of excess traction during delivery. Further, the plaintiff wanted Dr. Mollick to testify, based on Dr. Johnson's finding that the injury did not occur in utero, that the brachial plexus injury *must* have been the result of excess traction applied by Banks during delivery.

The trial judge considered the motion and ruled that:

With regard to Dr. Johnson, who is the Defendant's expert, I find the theory that the injury might have occurred in the birth canal is indeed a possibility. It's not a theory which can be expressed to a reasonable degree of medical proba-

bility, at least not at this time, and therefore, that opinion does not comply with *Daubert*. I do, however, think that Dr. Johnson can testify that there was no excess traction, and she can state the basis for her opinion.

The trial judge also ruled:

My ruling with regard to Dr. Mollick is that he may testify as to why he believes there has been medical negligence and that must be based on what happened or did not happen, whether there were certain maneuvers that were properly performed or other maneuvers which perhaps should not [sic] have been performed. I am not going to permit him to opine that it either must be an in-utero opinion [sic] or it must be excess traction. I don't think that's supported by current literature, and he certainly didn't support that unequivocally in the literature based upon Mr. Roseman's representation. The current literature is somewhat equivocal on that. And I don't think he needs to express that opinion in order for a plaintiff to establish a *prima facia* case.

At trial, Dr. Johnson testified that Brown performed all of the appropriate maneuvers and opined that even when all of the techniques are applied correctly during delivery "[i]t is that the squeeze can just be too tight for the baby, and there's, you know, with all the caution in the world, you can't always avoid that[, *i.e.* a brachial plexus injury.]"

Dr. Mollick testified that Brown did not attempt the correct delivery procedures, that she violated the applicable profession-al standard of care, and that her negligence caused Darnaya's brachial plexus injury. On cross-examination, Dr. Mollick testified that he believed that a brachial plexus injury could only occur as a result of excess traction. The jury deliberated and returned a verdict for the defendants.

After the jury verdict, Sturgis filed a Motion for a New Trial asserting that the trial judge should have admitted Dr. Mollick's testimony that excess traction was the *only* possible cause of Darnaya's injury. The trial judge denied that motion based on her pre-trial ruling. Sturgis appeals the trial judge's rulings.

### DISCUSSION

■ We review a trial judge's decision to exclude expert testimony for abuse of discretion.[2] "This deferential standard of review is simply a recognition that trial judges perform an important gatekeeping function and, thus, 'must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable' "[3]

Delaware Rule of Evidence 702 governs the admissibility of expert testimony. D.R.E. 702 provides:

[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

**2.** *M.G. Bancorporation v. Le Beau*, 737 A.2d 513, 522 (Del.1999) (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 141–42, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)).

**3.** *Garden v. State*, 815 A.2d 327, 338 (Del. 2003), *superseded by statute on other grounds,* 11 *Del. C.* § 4209(d) (2003), *as recognized in Starling v. State*, 882 A.2d 747 (Del.2005), quoting *(Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999))

principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Because of substantial similarities between D.R.E. 702 and Federal Rule of Evidence 702, we have chosen to follow the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[4]

As a gatekeeper, the trial judge must assess an expert's testimony to determine whether his testimony "has a reliable basis in the knowledge and experience of [the relevant] discipline."[5] In *Daubert*, the United States Supreme Court identified four factors that the trial judge, as gatekeeper, may consider to determine, under F.R.E. 702 and thus D.R.E. 702, whether the "principles and methodology" underlying the expert's testimony have a basis "rooted in science and derived from the scientific method."[6] Those four factors include:

(1) whether a theory or technique has been tested,

(2) whether it has been subjected to peer review and publication

(3) whether a technique had a high known or potential rate of error and whether there are standards controlling its operation, and

(4) whether the theory or technique enjoys acceptance within a relevant scientific community.[7]

We, based on the D.R.E., require, in addition to *Daubert*, a five-step test to determine the admissibility of scientific or technical expert testimony. Before admitting expert testimony, the trial judge must determine that:

(1) the witness is qualified as an expert by knowledge, skill, experience, training, or education,

(2) the evidence is relevant,

(3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field,

(4) the expert testimony will assist the trier of fact to understand the evidence or determine a material fact in issue, and

(5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[8]

"The party seeking to introduce the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence."[9]

In order to determine the admissibility of Dr. Mollick's opinion, we will first describe, in detail, the different testimony that the parties proffered about the causes of brachial plexus injuries and the trial judge's ruling on that testimony. Sturgis attempts to base her appeal on an inconsistency in the trial judge's decisions on both motions *in limine*. As we illustrate below, the trial judge's decisions are entirely consistent.

### 1. *Dr. Johnson's Expert Testimony*

Dr. Johnson initially sought to opine that three potential known causes of brachial plexus injuries exist. The diagram

4. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

5. *Le Beau*, 737 A.2d at 523.

6. *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786; *Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 795 (Del.2006).

7. *Id.*

8. *Tolson v. State*, 900 A.2d 639, 645 (Del. 2006); *Eskin v. Carden*, 842 A.2d 1222, 1227 (Del.2004).

9. *Bowen*, 906 A.2d at 795 (string citations omitted).

below helps explain Dr. Johnson's deposition testimony and proposed trial testimony. In the diagram, the large circle represents the universe of possible brachial plexus injuries. The smaller circles identify the specific causes about which Dr. Johnson sought to testify. The individual circles do not represent the entire area of the large circle because Dr. Johnson only sought to testify about known causes of brachial plexus injuries and left open the possibility for other potential unknown causes. Any area in the large circle not encompassed by a smaller circle represents an unknown cause of brachial plexus injuries.

*Causes of Brachial Plexus Injuries*

### 2. *Dr. Mollick's Expert Testimony*

Alternatively, Dr. Mollick sought to testify that only two possible causes of brachial plexus injuries exist. Because Dr. Johnson ruled out any possibility of an in utero injury, Sturgis argues that the brachial plexus injury *must* be a result of excess traction. In the diagram below, Dr. Mollick's two causes represent the entire circle of causes of brachial plexus injuries because he sought to opine that these were the *only* two possible causes.

*Causes of Brachial Plexus Injuries*

In Utero | Excess traction at birth

### 3. *The Trial Judge's Ruling on Expert Testimony*

In her rulings on the two motions *in limine*, the trial judge found that neither experts' testimony, in its entirety, met the *Daubert* standards. The trial judge decided that Dr. Johnson could not testify that brachial plexus injuries could occur on the descent through the birth canal. Although the trial judge believed that the descent through the birth canal could cause a brachial plexus injuries, she excluded Dr. Johnson's testimony as a recognized cause of brachial plexus injuries because it was not sufficiently supported by the medical literature. The trial judge also excluded part of Dr. Mollick's testimony. The trial judge reasoned that Dr. Mollick could not testify that the *only* two possible causes of brachial plexus injuries were (1) in utero and (2) as a result of excess traction be-

cause descent through the birth canal could potentially cause the injury. The trial judge found that the medical literature simply did not support Dr. Mollick's conclusion.[10]

Under the trial judge's ruling, Dr. Mollick could testify that two recognized, but non-exclusive, causes of brachial plexus injuries exist. Thus, Dr. Mollick could not opine that excess traction *must* have caused the injury based on Dr. Johnson's admission that the injury did not occur in utero. Nevertheless, the trial judge did permit Dr. Mollick to opine that Brown failed to perform all of the appropriate maneuvers to avoid the injury; breached the applicable standard of care; and, thus caused Darnaya's brachial plexus injury by using "excess traction." Alternatively, she allowed Dr. Johnson to testify that Brown did execute the correct maneuvers, acted

---

**10.** Of the two possible causes for the brachial plexus injury, Dr. Johnson had already excluded in utero injury and, thus, excess trac-

tion would have remained as the only potential cause of Darnaya's injury.

consistently with the applicable standard of care and that, even when one flawlessly performed the appropriate maneuvers, a brachial plexus injury might still result.

The final diagram below helps illustrate the trial judge's ruling. In the diagram, the excess traction circle and the in utero circle do not cover the entire area of the large circle, which represents the universe of potential causes, because the trial judge ruled that other possible causes of brachial plexus injuries, including the descent through the birth canal and other unknown reasons, exist.

*Causes of Brachial Plexus Injuries*

#### 4. *The Trial Judge Did Not Abuse Her Discretion*

■ On appeal, Sturgis asserts that the trial judge should have permitted Dr. Mollick's testimony that *only* two possible causes of brachial plexus injuries exist. However, Sturgis fails to point to any scientific basis for that position. In the absence of any reliable scientific basis to support that testimony, D.R.E. 702 and *Daubert* required the trial judge to limit Dr. Mollick's testimony. Sturgis, as the party seeking admission of that expert testimony, bears the burden to establish that the expert's testimony meets the strictures of Delaware law.[11]

■ Sturgis did not sustain the burden of proving the cause of the injury.[12] Dr. Mollick testified that, in his opinion, Brown violated the applicable standard of care, used excess traction and thereby caused the injury. In stark contrast to Dr. Mollick's testimony, Dr. Johnson testified that Brown acted diligently and within the applicable standard of care and that for some

11. *See Bowen,* 906 A.2d at 795.

12. *Froio v. Du Pont Hosp. for Children,* 816 A.2d 784, 786 (Del.2003); *see* 18 Del. C. § 6853.

unknown reason, despite Brown meeting the standard of care, Darnaya still suffered a brachial plexus injury. Based on Dr. Johnson's testimony, the jury could find that Brown did meet the standard of care and that nothing Brown did or failed to do proximately caused Darnaya's injury.

Sturgis' contention here is that any brachial plexus injury not caused in utero *must* therefore be a result of excess traction, thus obviating her burden to establish causation, and shifted the burden to the defendants to establish any alternative cause. However, Sturgis introduced no scientific evidence to support that proposition. Instead, Sturgis wants us to draw the inference from the trial judge's ruling—which barred Dr. Johnson from testifying that the injury could have occurred during descent—that the only two remaining possible causes of brachial plexus injuries were in utero and from excess traction at delivery. Since Dr. Johnson opined that the injury did not occur in utero, then "by default," excess traction is "the last man standing." In effect, despite Dr. Johnson's conflicting opinion, Sturgis would have us conclude that Dr. Mollick's opinion should be controlling and should be admitted. To the contrary, both experts' opinions were properly and fairly constrained and the jury chose which opinion to believe. The jury heard Dr. Johnson's opinion that Banks did not violate the standard of care and that injuries of the kind Darnaya suffered occurred without negligence. The jury chose to believe that testimony rather than Dr. Mollick's.

The trial judge specifically ruled that more than two possible causes exist but only two of causes meet the criteria under *Daubert* to support expert testimony that they resulted in Darnaya's injuries. Through our diagrams above, we show that the trial judge's decisions are entirely consistent.

■ As the gatekeeper, the trial judge sits in the best position to decide whether an expert's testimony should be admitted. Sturgis provides no evidence that supports an inference that brachial plexus injuries can only occur in utero or as a result of excess traction at birth. In order for Dr. Mollick's testimony to be admitted, D.R.E. 702 requires that the expert's "testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case." Without an articulable reason explaining why, based on scientific literature in the record, the trial judge erred in excluding expert testimony, we must, on appeal, defer to the expertise of the trial judge as gatekeeper. Accordingly, the trial judge appropriately barred Dr. Mollick from testifying that excess traction could be the only cause of the brachial plexus injury.

### CONCLUSION

Now, therefore, it is ordered that the judgment of the Superior Court is **AFFIRMED.**