# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THE STATE OF DELAWARE      )
           )
      Plaintiff,          )
           )
         v.             )
           )    Case No.: 2302002541
DERRICK BIVINGS        )
           )
     Defendant.        )

Submitted: April 3, 2025
Decided: July 3, 2025

## Memorandum Opinion

*Upon consideration of the State's Motion to Exclude Expert*
**GRANTED** in part and **DENIED** in part.

Diana A. Dunn, Esquire, Deputy Attorney General of DEPARTMENT OF JUSTICE, Wilmington, Delaware 19801, *Attorney for the State*.

James M. Stiller, Jr. Esquire of SCHWARTZ & SCHWARTZ, P.A., Dover, Delaware 19901, *Attorney for Defendant*.

**SCOTT, J.**

The defendant stands accused of Rape Fourth Degree. In his defense, he seeks to introduce expert testimony suggesting he suffers from sexsomnia, a form of parasomnia, and the alleged conduct occurred during a sleep episode over which he had no conscious awareness or control. The State moves to exclude the expert witness. For the reasons stated herein, the motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

On June 5, 2023, Derrick Bivings ("Defendant") was indicted for Rape Fourth Degree, and Sexual Abuse of a Person in a Position of Trust, Authority, or Supervision First Degree of his then-sixteen-year-old niece A.H.M.

On July 12, 2024, Defendant submitted a report from Dr. Brian Angsten—an expert in sleep medicine. The impressions provided were: sexsomnia and sleepwalking/NREM parasomnia, obstructive sleep apnea, and insomnia. The report, however, did not specify whether medical records and police reports were reviewed, nor did it provide a conclusive opinion. Defendant indicated they intended to call Dr. Angsten as an expert, with a supplemental report forthcoming.

In September 2024, Defendant provided the State with a sleep study interpretation conducted by Masood Siddiqui, the supplemental report from Dr.

Angsten, and a report from Nurse Practitioner Demi Ogunwusi. Defendant indicated they also intended to call Dr. Ogunwusi as an expert.

In November 2024, Defendant provided the State with the medical reports reviewed by Dr. Angsten.

The Court held a conference on November 22, 2024. The State expressed concerns "regarding the lack of substance contained in the expert reports provided, the lack of nexus between the opinions rendered and the facts of the case, and the reports or literature relied upon by the experts in rendering their opinions."[1]

On November 25, 2024, Defendant submitted a more detailed report from Dr. Angsten. But that report did not confirm whether any police reports or recorded statements related to the incident were reviewed. Nor did it opine on whether Defendant was experiencing sexsomnia during the incident.

On November 27, 2024, the State moved to exclude both Dr. Angsten and Dr. Ogunwusi's reports. Defendant opposed. The Court held a hearing addressing the motion on December 4, 2024.

On March 5, 2025, Defendant filed a letter, as well as Dr. Angsten's addendum report dated February 3, 2025.[2] The letter stated they intended to call

---

[1] State's First Motion to Exclude, D.I. 72.

[2] D.I. 84.

Defendant's wife and former girlfriend to testify about their personal observations of his past abnormal sleep behaviors.[3]

The State renewed its motion on April 3, 2025 (the "Motion").[4] The matter is now ripe for decision.

## STANDARD OF REVIEW

The Court serves as a gatekeeper regarding the admissibility of expert testimony.[5] Under Delaware Rule of Evidence 702, the Court must "determine whether the proposed evidence is both "relevant" and "reliable" when determining the admissibility of expert testimony.[6] In determining "whether an expert has a reliable basis in the knowledge and experience of the relevant discipline,"[7] this Court applies the *Daubert* standard. Rule 702 permits expert testimony if the expert's scientific, technical, or specialized knowledge assists the trier of fact in understanding the evidence or determining a fact in issue. The testimony must be

---

[3] *See id.*

[4] D.I. 85.

[5] *Li v. GEICO Advantage Ins. Co.*, 2019 WL 4928614, at *1 (Del. Super. Oct. 7, 2019) (citing *Sturgis v. Bayside Health Ass'n*, 942 A.2d 579, 583 (Del. 2007)).

[6] *Estate of Valdez v. BNSF Railway Co.*, 2020 WL 7365800, at *4 (Del. Super. Dec. 15, 2020) (citing *Tumlinson v. Advanced Micro Devices, Inc.*, 2013 WL 7084888, at *2 (Del. Super. Oct. 15, 2013)) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).

[7] *Li*, 2019 WL 4928614, at *1 (citing *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 521 (Del. 1999) (adopting the *Daubert* standard as the correct interpretation of Delaware Rule of Evidence 702)).

based on sufficient facts or data, be the product of reliable principles and methods, and the expert must have reliably applied these principles and methods to the case facts.[8]

Our Supreme Court has adopted a five-part test for the admissibility of expert testimony, requiring the judge to determine whether (1) the witness is qualified in the relevant discipline, (2) the evidence is relevant and reliable, (3) the expert's opinion is based on information reasonably relied upon by experts in the field, (4) the testimony will assist the trier of fact in understanding the evidence or determining a fact in issue, and (5) the testimony will not create unfair prejudice, confuse the issues, or mislead the jury.[9] The party introducing expert testimony must demonstrate the reliability of their opinions.[10]

## DISCUSSION

The admissibility of expert testimony on sexsomnia is an issue of first impression in Delaware. Dr. Angsten appears qualified because of his knowledge, experience, and education in sleep medicine. But the State challenges the reliability of his report, noting Dr. Angsten did not review any information "related to the

---

[8] D.R.E. 702.

[9] *Nelson v. State*, 628 A.2d 69, 74 (Del. 1993).

[10] *State v. Phillips*, 2015 WL 5168253, at *3 (Del. Super. Sept. 2, 2015) (citing *State v. McMullen*, 900 A.2d 103, 114 (Del. Super. 2006)).

investigation of the sexual assault . . . recorded statements of the defendant, his wife, or the complaining witness, police reports or other associated recordings." The Motion raises a concern, questioning the reliability of his opinion.

Under *Nelson v. State*, the Court must determine whether (1) the witness is qualified in the relevant discipline, (2) the evidence is relevant and reliable, (3) the expert's opinion is based on information reasonably relied upon by experts in the field, (4) the testimony will assist the trier of fact in understanding the evidence or determining a fact in issue, and (5) the testimony will not create unfair prejudice, confuse the issues, or mislead the jury.[11] The first and fourth factors have been met. As a Board-certified expert in sleep medicine with 23 years of experience, Dr. Angsten is qualified.[12] Sexsomnia, as an abnormal condition, falls outside the normal experience and knowledge of laypersons. Expert testimony would assist the fact finders in understanding the general nature of it. The Court, however, takes issue with the remaining factors.

As to the second factor, per Dr. Angsten's February 3, 2025 report, he reviewed: (a) 13 office visit notes from various healthcare providers from December 2018 to March 2024, (b) a home sleep test report from January 30-31, 2022, (c) a

---

[11] *Nelson*, 628 A.2d at 74.

[12] *See* D.I. 84, Ex. A ("Angsten's Report") at 1, 3.

laboratory polysomnogram interpretation from June 21, 2024, a psychological evaluation from May 30, 2023, (d) a direct examination of the defendant on May 19, 2024, (e) the defendant's self-reported history of sleep behaviors, statements from the defendant's current wife about his sleep behaviors, and (f) information from the defendant regarding his former girlfriend's observations of past sleep behaviors.[13] Notably absent from the review are any police reports from the February 5, 2023 incident or witness statements from the alleged victim.

Regarding the third factor, *R. v. Luedecke*, a 2008 decision from the Ontario Court of Appeal addressing sexsomnia, provides some guidance.[14] The respondent there was charged with sexual assault and acknowledged engaging in non-consensual sexual relations, claiming he was asleep and unaware of his actions due to non-mental disorder automatism, specifically parasomnia. The trial judge had to determine if the respondent's actions were involuntary and if they were the result of a mental disorder, which would render him not criminally responsible on account of mental disorder.[15]

The expert witness there, a sleep disorder specialist, testified that the respondent was in a parasomniac state during the incident, acting without volition or

---

[13] *Id.* at 4.

[14] 93 O.R.3d 89 (Can. Ont. C.A. 2008).

[15] *Id.* at 94.

control.[16]  The expert's testimony was central to the respondent's defense, as it provided an explanation for the involuntary nature of the respondent's actions due to a parasomniac state.  His testimony was necessary to help the court understand the complex medical condition of parasomnia and its implications for the respondent's behavior.[17]

His expertise in sleep disorders was not questioned at trial, and the Crown did not present any competing expert evidence.  The expert saw the respondent twice in his office and had him complete a "detailed questionnaire."[18]  He interviewed the respondent's mother and brother.[19]   Notably, the respondent spent two nights in the expert's sleep clinic, where his brain waves and other vital signs were monitored, and he was videotaped while asleep.[20]  The brain wave activity showed abrupt transitions from deep sleep to wakefulness, which the expert identified as a hallmark of parasomnia.[21]   The expert also reviewed all disclosure documentation and transcripts of the testimony relevant to the charge, including the victim's statement to the police.[22]  He assessed the likelihood of recurrence of sexsomnia involving

---

[16] *Id.* at 98.

[17] *Id.* at 99.

[18] *Id.* at 100.

[19] *Id.*

[20] *Luedecke*, 93 O.R.3d at 100.

[21] *Id.* at 101.

[22] *Id.* at 100.

non-consensual sexual activity as "very small," attributing the event to unusual circumstances and the respondent's lack of awareness of his condition at the time.[23]

The trial court found the expert's methodologies were grounded in the scientific understanding of parasomnia, which involves sudden unexplained arousal from sleep, and is recognized by sleep experts as a condition where individuals can engage in complex behaviors without control.[24]  The brain wave patterns observed during the sleep clinic sessions were considered conclusive evidence of parasomnia, as these patterns cannot be manipulated by the subject.[25]  The expert identified several factors that predisposed the respondent to parasomnia, including a family history of the condition, prior incidents, and specific triggers present on the night of the incident, such as sleep deprivation, exhaustion, and alcohol consumption.[26]

The appellate court did not specifically address the admissibility of the expert testimony in terms of whether it was correctly admitted by the trial court. But the appellate court did not find any issue with the trial court's reliance on the expert testimony in terms of its admissibility.[27]  The appellate court's decision focused on the characterization of the respondent's condition as non-mental disorder

---

[23] *Id.* at 102.

[24] *Id.* at 99–100.

[25] *Id.* at 101.

[26] *Luedecke*, 93 O.R.3d at 101.

[27] *Id.* at 94–95.

automatism versus mental disorder automatism, rather than on the admissibility of the expert testimony itself.[28]

More locally, the Delaware Supreme Court in *Rivera v. State* addressed the admissibility of expert testimony concerning parasomnia,[29] or "sleep terror," as a defense against a murder charge.[30] The expert's evaluation included: (1) a sleep study conducted at Christina Hospital post-incident; (2) initial statements from the defendant's ex-wife's to a detective; (3) accounts from neighbors; (4) a statement from the defendant's cellmate; and (5) a statement prepared by the defendant for the expert's review.[31] Our Supreme Court upheld the lower court's decision to exclude the expert's opinion that the defendant experienced a sleep terror on the night in question.[32] The Court held the sleep study showed no sleep terror episodes, and the expert had never physically examined the defendant.[33] The Court found the expert's opinion relied solely on the defendant's statements and those of non-expert third

---

[28] *Id.* at 103.

[29] "Parasomnias are disruptive behaviors or events that affect your sleep. You might walk, talk or make physical movements to act out a dream. You might wake up in fear or be unable to move." Cleveland Clinic, *Parasomnias*, https://my.clevelandclinic.org/health/diseases/12133-parasomnias--disruptive-sleep-disorders (last reviewed Jan. 25, 2025).

[30] 7 A.3d 961, 965 (Del. 2010).

[31] *Id.* at 966.

[32] *Id.* at 971–72.

[33] *Id.* at 972.

parties,[34] which did not provide "sufficient facts or data" for a reliable medical diagnosis.[35] The Court noted the defendant was not prejudiced by the exclusion of the expert testimony regarding whether he experienced a sleep terror during the murder. Although the expert could not testify to this specific point, he was able to present the defendant's version of events, which included his belief that he attacked the victim during a sleep terror. The jury was not bound by the expert's testimony and ultimately found that Rivera had the requisite intent to commit first-degree murder. Thus, the Court held the trial court's exclusion of the expert's testimony about the defendant's state of mind at the time of the murder was deemed not to be an abuse of discretion, as the testimony was not considered reliable under the standards set by DRE 702.

So too here. Dr. Angsten's evaluation suffers from similar deficiencies. The 2022 home sleep study, conducted over a year before the incident, showed "mild obstructive sleep apnea" on one night and normal results on the second night.[36] The June 2024 polysomnogram, while showing some abnormalities including a low

---

[34] The expert reviewed statements from defendant's cell mate, defendant's ex-wife, and other residents living near defendant's home. *Id.* at 972.

[35] *Id.*

[36] Angsten's Report at 6.

oxygen saturation nadir, although "suggestive of ongoing sleep related breathing disorders," revealed no parasomnia episodes.[37]

Defendant argues *Luedecke* is informative—"Dr. Angsten relied in part on [Defendant's] history consisting of information provided to him directly from [Defendant] and his wife, and indirectly from a former girlfriend of [Defendant]."[38] Indeed, *Luedecke* provides insight on how an expert in sexsomnia should reach his conclusion, but it is not as limited as Defendant suggests. Dr. Angsten's opinion about the incident primarily relies on Defendant's self-serving statements and accounts from non-medical third parties who are affiliated with Defendant.[39] Unlike *Luedecke*, where "the respondent spent two nights in [the expert]'s sleep clinic" and reviewed "all of the disclosure documentation and transcripts of the testimony relevant to the charge,"[40] and unlike *Rivera*, where the expert had access to police investigation statements from the ex-wife made shortly after the incident, Dr. Angsten did not conduct any independent sleep study nor did he review any police reports or alleged victim statements. His assessment is based on retrospective accounts. Defendant's current wife, the only potential witness, had taken muscle

---

[37] *Id.* at 9–10.

[38] "According to the patient, his ex-girlfriend stated that the patient would walk outside of their home in the middle of the night." *Id.* at 5.

[39] Third parties include Defendant's wife and former girlfriend.

[40] *Luedecke*, 93 O.R.3d at 101.

relaxants and has no memory of the events. It's also unclear from the record, but it appears that Dr. Angsten's assessment of Defendant's former girlfriend's statement was provided by Defendant himself.[41]

The medical records reviewed by Dr. Angsten, while noting a history of sleep issues, provide no insight into Defendant's condition at the time of the incident. Office visits from 2018 to 2024 show ongoing treatment for sleeping disorders but lack documentation of sexsomnia episodes near the incident. The May 2023 psychological evaluation, conducted months later, also fails to shed light on Defendant's mental state that night.

This Court recognizes parasomnia is a medical condition warranting consideration. Defendant may present evidence of his documented sleep disorder history. Dr. Angsten may testify about the general nature and characteristics of sexsomnia, including how parasomnia episodes typically manifest and potential triggers to assist the triers of fact to understand these conditions better. But Dr. Angsten may not testify that Defendant experienced a sexsomnia episode on February 5, 2023 as it may create unfair prejudice, confuse the issues, or mislead the jury—failing the fifth factor. The probative value of his testimony does not

---

[41] Angsten's Report at 5 ("According to [Defendant], his ex-girlfriend stated that [Defendant] would walk outside of their home in the middle of the night…").

substantially outweigh the danger of unfair prejudice or jury confusion.[42] Dr. Angsten himself did not have a full picture of the records in reaching that conclusion. As in *Rivera*, the jury will hear evidence about Defendant's sleep disorder and can assess whether it raises reasonable doubt about his mental state during the incident.

## CONCLUSION

Accordingly, the State's Motion is **GRANTED in part** to the extent it seeks to preclude Dr. Angsten from testifying that Defendant was experiencing a sexsomnia episode on the February 5, 2023. The Motion is **DENIED in part** to the extent it seeks to exclude expert testimony regarding the general nature of parasomnia and Defendant's documented medical history of sleeping disorders.

**IT IS SO ORDERED.**

*/s/ Calvin L. Scott*
Judge Calvin L. Scott, Jr.

---

[42] *Sheehan v. Oblates of St. Francis de Sales*, 15 A.3d 1247, 1253–54 (Del. 2011) (citing *Tolson v. State*, 900 A.2d 639, 645 (Del. 2006)).