# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHARUPORN ROBINSON, and | ) | |
| PETER ROBINSON, her husband, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. N16C-06-077 ALR |
| | ) | |
| REGIONAL HEMATOLOGY AND | ) | |
| ONCOLOGY, P.A., a Delaware | ) | |
| Corporation, and RAMYA | ) | |
| VARADARAJAN, M.D., | ) | |
| Defendants. | ) | |

Submitted: April 13 and 20, 2018
Decided: May 8, 2018

## MEMORANDUM OPINION

*Upon Plaintiffs' Motion for Summary Judgment on Claims of Comparative Negligence and Mitigation of Damages*
**DENIED WITHOUT PREJUDICE**

*Upon Defendants' Motion in Limine to Preclude Evidence of Subsequent Remedial Measures, Evidence Intended to be Protected by Peer Review Privilege, and Evidence of Expressions of Apology, Sympathy, or Compassion*
**GRANTED IN PART**

*Upon Defendants' Motion in Limine to Preclude Evidence of Linda Wilkinson's Medical History and to Any Changes in Telephone Triage Procedures*
**GRANTED IN PART**

*Upon Defendants' Motion in Limine to Limit the Testimony of Neil Kaye, M.D.*
**DENIED**

*Upon Plaintiffs' Motion in Limine to Exclude Testimony of Stephen Mechanick, M.D.*
**DENIED**

**ROCANELLI, J.**

This is a medical negligence case stemming from alleged injuries suffered by Plaintiff Charuporn Robinson ("Mrs. Robinson") after she developed an infection in her chemotherapy port site. Mrs. Robinson and her husband, Peter Robinson, (collectively, "Plaintiffs") filed suit against Regional Hematology and Oncology, P.A. ("RHOPA") and Dr. Ramya Varadarajan (collectively, "Defendants"). Plaintiffs allege that Dr. Varadarajan and the staff at RHOPA acted negligently by delaying to bring Mrs. Robinson in for treatment, which caused Mrs. Robinson to suffer substantial injuries. Defendants filed an answer denying liability and asserting a number of affirmative defenses, including comparative negligence and failure to mitigate damages.

Trial is scheduled to begin on June 25, 2018. The parties have completed discovery and Plaintiffs have moved for partial summary judgment on Defendant's claims of comparative negligence and mitigation of damages. The parties have also filed multiple motions *in limine.* This is the Court's decision on Plaintiff's motion for summary judgment and the parties' motions in *limine.*

## **FACTUAL BACKGROUND**

Mrs. Robinson was a breast cancer patient of Dr. Varadarajan at RHOPA. Mrs. Robinson's chemotherapy regimen was to consist of six cycles of chemotherapy. Mrs. Robinson received her second chemotherapy cycle on January 19, 2015. From January 21, 2015 to January 28, 2015, Mrs. Robinson called

1

RHOPA multiple times with various complaints. Mrs. Robinson was next seen at RHOPA on January 28, 2015.

At approximately 11:38 a.m. on January 28, 2015, Mrs. Robinson spoke to a nurse at RHOPA to advise, among other things, that her chemotherapy port site was hurting and leaking, that her body was numb and ached, that she felt like she was dying, and that she wanted to be seen by Dr. Varadarajan. At that point, the staff at RHOPA advised Mrs. Robinson to go to the emergency room. Mrs. Robinson stated that she would prefer to be seen by Dr. Varadarajan. The RHOPA staff scheduled an appointment with Dr. Varadarajan for approximately 2:30 p.m.

At her appointment, a RHOPA nurse evaluated Mrs. Robinson and discovered that her chemotherapy port site was infected. Mrs. Robinson was sent to her breast surgeon's office, where a nurse removed the infected port. Mrs. Robinson was then sent to the emergency room at Christiana Hospital, where she was admitted for treatment of the infection. Mrs. Robinson was admitted for ninety-two days, during which time she developed sepsis and respiratory failure. Mrs. Robinson was on life support for twenty-seven days and on a ventilator for sixty-three days. Mrs. Robinson's four remaining chemotherapy treatments were cancelled.

**<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiffs move for summary judgment on Defendants' claims of comparative negligence and failure to mitigate damages. Plaintiffs contend that Defendants'

2

claims of comparative negligence and mitigation of damages go to Mrs. Robinson's initial refusal to go to the emergency room, which delayed her treatment by approximately three to four hours. Plaintiffs assert that the Defendants' nurse expert testified that patients undergoing chemotherapy are instructed to avoid places presenting a higher risk of infection, such as an emergency room. Plaintiffs also assert that Defendants' experts concede that the three to four delay in Mrs. Robinson's treatment on January 28, 2015 did not make a difference in the outcome. Therefore, Plaintiffs argue that Defendants cannot establish the affirmative defenses of comparative negligence and failure to mitigate damages.

In response, Defendants instead emphasize Mrs. Robinson's action or inaction prior to January 28, 2015. Defendants argue that Mrs. Robinson was instructed to advise the staff at RHOPA of any redness, tenderness, or swelling around her chemotherapy port site, at which point the staff would have advised that she be treated. Defendants further contend that Mrs. Robinson kept a diary detailing pain and redness at her chemotherapy port site in the days leading up to January 28, 2015, but that she failed to inform the staff at RHOPA of these symptoms. Defendants argue that Plaintiff's own expert admits that the outcome would have been different if Mrs. Robinson had begun treatment for the infection on any day prior to January 28, 2015. Therefore, Defendants argue that evidence of comparative fault and failure to mitigate damages should be presented to the jury.

3

The Court may grant summary judgment only where the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] A genuine issue of material fact is one that "may reasonably be resolved in favor of either party."[2] The moving party bears the initial burden of proof and, once that is met, the burden shifts to the non-moving party to show that a material issue of fact exists.[3] At the motion for summary judgment phase, the Court must view the facts "in the light most favorable to the non-moving party."[4] Summary judgment is only appropriate if Defendants' claims lack evidentiary support such that no reasonable jury could find in their favor.[5]

Plaintiffs are not entitled to summary judgment on Defendants' claims of comparative negligence and failure to mitigate damages because there are genuine issues of material fact in dispute. While Plaintiffs contend that Defendants' claims go solely to Mrs. Robinson's actions on January 28, 2015, Defendants instead rely on Plaintiff's actions on the days leading up to January 28, 2015 to supports its claims. To that end, while Plaintiffs argue that the staff at RHOPA should have told Plaintiff to come in earlier for treatment, Defendants contend that Plaintiff should

---

[1] Super. Ct. Civ. R. 56(c).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986).
[3] *Moore v. Sizemore*, 405 A.2d 679, 680–81(Del. 1979).
[4] *Brozka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[5] *See Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1200–05 (Del. 2015); *Edmisten v. Greyhound Lines, Inc.*, 2012 WL 3264925, at *2 (Del. Aug. 13, 2012).

4

have mentioned any symptoms at her chemotherapy port site earlier, pursuant to RHOPA's instructions. Viewing the facts most favorable to Defendants, a reasonable jury could conclude the Mrs. Robinson's actions contributed to the severity of her injuries. Therefore, summary judgment is inappropriate, and Defendants' claims of comparative negligence and failure to mitigate damages may be presented at trial.[6] The standard for consideration of these issues at that time will be Delaware Rule of Civil Procedure 50.[7]

## MOTIONS *IN LIMINE*

I. **Defendant's Motion *In Limine* to Preclude Evidence of Subsequent Remedial Measures, Evidence Intended to Be Protected by the Peer Review Privilege, and Evidence of Expressions of Apology, Sympathy, or Compassion**

Following Mrs. Robinson's hospitalization and treatment, RHOPA conducted an Action Review of its telephone triage policy to determine if any policy changes could prevent a similar outcome in the future. After its review, RHOPA produced two documents containing recommended changes to its telephone triage policy. The first document was for internal use within RHOPA, and the second was shared with Mrs. Robinson's family.

---

[6] *See Nutter v. Christiana Care Health Services, Inc.*, 2014 WL 1760342, at *1-*2 (Del. Super. Apr. 28, 2014) (providing that if there is any evidence from which a reasonable jury could conclude that the plaintiff's actions in a medical negligence case contributed to his or her alleged injuries, the evidence should go to the jury).
[7] Super. Ct. Civ. R. 50.

5

Defendants argue that both documents are evidence of subsequent remedial measures, and are inadmissible under Delaware Rule of Evidence 407 ("Rule 407"), which provides, "When after an injury or harm allegedly caused by an event, measures are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence."[8] However, Rule 407 also provides that evidence of subsequent remedial measures may be admissible if offered for another purpose, such as "providing ownership, control or feasibility of precautionary measures, if controverted, or impeachment."[9]

Plaintiffs concede that evidence of subsequent remedial measures is inadmissible to prove negligence. Therefore, evidence of any changes to RHOPA's telephone triage policy made after Plaintiff's injuries shall not be admissible to prove negligence. However, to the extent that the evidence so provides at trial, evidence of RHOPA's subsequent remedial measures as addressed in the document provided to Mrs. Robinson's family may be admissible for another purpose, such as proving feasibility of precautionary measures, pursuant to Rule 407. If admission of this evidence is considered, the Court would apply the balancing test required by Delaware Rule of Evidence 403 ("Rule 403").

---

[8] D.R.E. 407.
[9] *Id.*

Defendants argue that the document produced for internal use within RHOPA is inadmissible as it is protected by the peer review privilege. The Delaware Medical Peer Review Statute ("Peer Review Statute") protects the good faith actions of members of medical peer review committees "whose function is the review of medical records, medical care and physicians' work, with a view to the quality of care and utilization of hospital or nursing home facilities."[10] The Peer Review Statute exempts the records and proceedings of such peer review committees from discovery.[11] The Peer Review Statute is "intended to encourage the frank and open discussion of [physician] … performance by medical peer review committees" with a view "towards improving the quality of medical care in Delaware."[12] Plaintiffs do not dispute Defendants' arguments that the peer review privilege applies. Therefore, to the extent that RHOPA's Action Review constituted a medical peer review committee as contemplated under the Peer Review Statute, RHOPA's internal document is privileged from disclosure under the peer review privilege.[13]

Defendants also assert that members of the Plaintiffs' family testified at their depositions about expressions of apology, sympathy, and compassion made by Dr. Varadarajan. Defendants argue that this evidence should be precluded under 10 *Del.*

---

[10] 24 *Del. C.* § 1768(a).
[11] 24 *Del. C.* § 1768(b).
[12] *Quinn v. Kent General Hospital, Inc.*, 617 F. Supp. 1226, 1234 (D. Del. 1985).
[13] 24 *Del. C.* § 1768(b).

7

*C.* § 4318(b) ("Section 4318(b)").  Section 4318(b) provides that statements of a healthcare provider "that express apology …, sympathy, compassion, condolence, or benevolence relating to the pain, suffering, or death of a person as a result of an unanticipated outcome of medical care" are inadmissible in a civil action brought against the health care provider.[14]  Plaintiffs concede that such statements are inadmissible under Section 4318(b).  Therefore, any evidence that Dr. Varadarajan made statements of apology or sympathy to Plaintiff's family shall be inadmissible at trial.

## II. Defendant's Motion *In Limine* to Preclude Evidence of Linda Wilkinson's Medical History and Regarding Any Changes in Telephone Triage Procedures

Linda Wilkinson ("Wilkinson") is a registered nurse employed at RHOPA. Until October 2016, Wilkinson was responsible for overseeing telephone triage. However, during 2014 and 2015, Wilkinson had help with her duties from other nurses at RHOPA.  During her deposition, Wilkinson testified that RHOPA made changes to its telephone policy in October 2016, after Mrs. Robinson's treatment at RHOPA.  In addition, Wilkinson testified that around the time period of October 2016, Wilkinson was hospitalized for stress relating to the number of phone calls she was receiving.

---

[14] 10 *Del. C.* § 4318(b).

Defendants reiterate that any evidence of changes to RHOPA's telephone triage policy should be precluded under Rule 407. As stated above, evidence of RHOPA's subsequent remedial measures shall not be admissible to prove negligence, but may be admissible for another reason, such as proving control or feasibility,[15] as long as the probative value is not substantially outweighed by the danger of unfair prejudice.[16]

Defendants also assert that Plaintiffs should be precluded from entering any evidence pertaining to Wilkinson's medical condition or hospitalization. Defendants assert that such evidence is irrelevant under Delaware Rule of Evidence 401 ("Rule 401"), as it post-dates the medical care received by Mrs. Robinson by over one year. Defendants also argue that such evidence should be excluded under Rule 403, because its probative value is substantially outweighed by the danger of unfair prejudice and the potential for confusing and misleading the jury. In response, Plaintiffs agree not to refer to Wilkinson's hospitalization without first seeking approval of the Court outside of the presence of the jury. As a result, the Court need not decide at this point whether evidence of Wilkinson's hospitalization would be inadmissible. Rather, the Court will conduct the necessary analysis under Rules 401 and 403 should the issue arise at trial.

---

[15] D.R.E. 407.
[16] D.R.E. 403.

## III. The Parties' Motions *In Limine* to Preclude Expert Testimony

Plaintiffs and Defendants have both filed Motions *in Limine* pertaining to each party's expert testimony. The admissibility of expert testimony is governed by Delaware Rule of Evidence 702 ("Rule 702"), which provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Delaware courts apply the analytical framework set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[17] Consistent with *Daubert*, the Court considers a five-step test to determine whether expert testimony is admissible at trial.[18] The Court must determine whether:

(1) the witness is qualified as an expert by knowledge, skill, experience, training or education;
(2) the evidence is relevant;
(3) the expert's opinion is based upon information reasonably relied upon by experts in that particular field;
(4) the expert testimony will assist the trier of fact to understand the evidence or determine a material fact in issue; and

---

[17] *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 521–22 (Del. 1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).
[18] *Bowen v. E.I. DuPont de Nemours & Co.*, 906 A.2d 787, 795 (Del. 2006).

(5)  the expert testimony will not create unfair prejudice or confuse or mislead the jury.[19]

The party seeking to introduce expert testimony bears the burden of establishing admissibility by a preponderance of the evidence.[20]

The decision to admit expert testimony is not a conclusion that the expert's opinion is correct. Rather, the trial judge's role as gatekeeper[21] is limited to determining "whether the proponent of the evidence has demonstrated that scientific conclusions have been generated using sound and reliable approaches."[22] Expert opinions are admissible where they assist the trier of fact in understanding the facts or evidence presented at trial[23] and are otherwise the relevant product of reliable methodology.[24] "Once the trial court has determined that a witness is competent to

---

[19] *Smith v. Grief*, 2015 WL 128004, at *2 (Del. Jan. 8, 2015) (citing *Bowen*, 906 A.2d at 794); *Pallano v. AES Corp.*, 2016 WL 750432, at *3 (Del. Super. Feb. 26, 2016).

[20] *Pavey v. Kalish*, 2010 WL 3294304, at *3 (Del. 2010); *Sturgis v. Bayside Health Ass'n*, 942 A.2d 579, 584 (Del. 2007).

[21] *Pavey*, 2010 WL 3294304 at *3; *Sturgis*, 942 A.2d at 583.

[22] *State v. McMullen*, 900 A.2d 103, 114 (Del. Super. 2006) (citing *In re Paoli R. R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)).

[23] *Pavey*, 2010 WL 3294304, at *3; *Ward v. Shoney's, Inc.*, 817 A.2d 799, 803 (Del. 2003); *Sweiger v. Delaware Park, L.L.C.*, 2013 WL 6667339, at *4 (Del. Super. Dec. 9, 2013).

[24] *Rodriguez v. State*, 30 A.3d 764, 769 (Del. 2011); *McNally v. State*, 980 A.2d 364, 368 (Del. 2009) *M.G. Bancorporation, Inc.*, 737 A.2d at 521.

11

testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than its admissibility."[25]

### A. Defendants' Motion in Limine to Limit the Testimony of Neil Kaye, M.D.

Defendants move to exclude the testimony of Plaintiff's expert, Dr. Neil Kaye on two grounds. First, Defendants argue that Dr. Kaye is not qualified to offer a causation opinion based on his independent interpretation of an MRI because he is not a neurologist or neuroradiologist, and does not have specialized education and training in those fields. Second, Defendants seek to exclude Dr. Kaye's opinion that Mrs. Robinson is at an increased risk for premature dementia on the grounds that he did not demonstrate that the opinion was reliable, he did not quantify the increased risk, and because the opinion was absent from his expert report.

### 1. Dr. Kaye is Qualified to Offer a Causation Opinion.

Defendants argue that Dr. Kaye is not qualified to offer a causation opinion based on a review of an MRI because he is not a radiologist or neuroradiologist. However, Dr. Kaye is a neuropsychiatrist, who reviews MRI's in his medical practice and whose qualifications include neuroimaging. Therefore, the Court is satisfied that Dr. Kaye is an expert qualified by knowledge, skill, experience,

---

[25] *Perry v. Berkley*, 996 A.2d 1262, 1270–71 (Del. 2010) (quoting *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 283 (8th Cir. 1995)).

training, and education.[26]   In addition, Dr. Kaye's testimony is relevant and will assist the jury in understanding the evidence and determining a fact in issue.   Dr. Kaye's opinions are based on information reasonably relied on by experts in the fields related to neuroimaging.   Dr. Kaye's opinions will not create unfair prejudice or confuse or mislead the jury.   Defendants' challenges to Dr. Kaye's qualifications go to weight, not to admissibility, and Defendants can effectively cross-examine Dr. Kaye at trial.

> 2.      *Dr. Kaye's Opinion that Mrs. Robinson is at Increased Risk for Premature Dementia is Admissible.*

Defendants seek to exclude Dr. Kaye's opinion that Mrs. Robinson is at an increased risk for developing premature dementia.   Dr. Kaye gave this opinion in response to questioning from defense counsel at his deposition.   Defendants challenge the admissibility of this opinion on three grounds.

First, Defendants argue that Dr. Kaye did not demonstrate that his opinion is reliable or based upon information reasonably relied on by experts in the particular field.   However, Dr. Kaye stated that there is abundant medical literature to support the proposition that individuals who suffer brain injuries are more likely to develop premature dementia.   In addition, Dr. Kaye made a comparison to the increased

---

[26] *See Sweede v. Cigna Healthplan*, 1989 WL 12609, at *5 (Del. Super. Feb. 2, 1989) ("It is well established that medical doctors are competent to testify on all medical subjects upon which they claim sufficient ability to express an opinion.")

13

likelihood of premature dementia in professional football players who suffer brain injuries.  Defendants assert that Dr. Kaye did not cite to specific articles or instances from his own experience to support his opinion, but Delaware law does not provide "that a proffered opinion will be excluded *unless* the expert relies on literature or treatises in formulating an opinion."[27]  In addition, Defendants can effectively cross-examine Dr. Kaye on this point at trial.

Second, Defendants argue that Dr. Kaye's opinion should be excluded because he did not quantify the increased risk that Mrs. Robinson will suffer premature dementia.  In *United States v. Anderson*, the Delaware Supreme Court adopted the increased risk of future harm doctrine, which provides that "a person may recover damages if the person's risk of suffering a negative medical condition is increased because of medical malpractice."[28]  However, the Delaware Supreme Court "did not hold that a plaintiff must present evidence of the precise statistical percentage" of the increased risk of future harm.[29]  Therefore, Dr. Kaye was not required to present evidence on the precise statistical percentage that Mrs. Robinson is at an increased risk for premature dementia for that opinion to be admissible.

---

[27] *Pignataro v. George and Lynch, Inc.*, 2013 WL 1088333, at *5 (Del. Super. Mar. 13, 2013) (emphasis in original).

[28] 669 A.2d 73, 75 (Del. 1995) (citing *United States v. Cumberbatch*, 647 A.2d 1098 (Del. 1994).

[29] *Kardos v. Harrison*, 980 A.2d 1014, 1017 (Del. 2009).

14

Nevertheless, Dr. Kaye has since produced an affidavit stating that the increased risk is three-fold.

Third, Defendants argue that Dr. Kaye's opinion regarding Mrs. Robinson's increased risk for premature dementia was absent from his report, and should, therefore, be excluded at trial. Defendants rely on *Duncan v. O.A. Newton & Sons Co.*[30] and *Sammons v. Doctors for Emergency Services, P.A.* for this proposition.[31] However, *Duncan* and *Sammons* are inapposite to the present case.

In *Duncan*, the plaintiff never provided any expert reports.[32] Instead, the plaintiff argued that she could merely identify expert witnesses and the defendants could take their deposition to learn their opinions.[33] This Court rejected Plaintiff's position, stating, "It is not reasonable to require Defendants' counsel to go on a wild goose chase with Plaintiff's experts or to depose Plaintiff's experts without the benefit of having their opinions and the medical or scientific reasoning for those opinions."[34] As a result, the Court granted the defendants' motion for summary judgment, concluding that the plaintiff could not pursue her case in the absence of expert reports.

---

[30] 2006 WL 2329378 (Del. Super. July 27, 2006).
[31] 913 A.2d 519 (Del. 2006).
[32] *Duncan*, 2006 WL 2329378 at *4-*5.
[33] *Id.* at *6.
[34] *Id.*

In *Sammons*, the plaintiff filed a medical negligence action against an emergency medicine practice group and an individual practitioner alleging that the defendants failed to diagnose sepsis.[35] The plaintiff identified an expert witness who would testify solely on the life expectancy of an individual with sickle cell.[36] Given the limited scope of the expert witness's testimony, counsel for the emergency practice group did not attend the expert's deposition.[37] However, at the deposition, the plaintiff's expert gave a causation opinion for the first time in response to direct questioning from plaintiff's counsel.[38] The court held that the emergency medicine group was prejudiced by the plaintiff's actions because it relied on the plaintiff's expert disclosures in deciding not to attend the deposition. As a result, the court precluded the expert from testifying about causation at trial.

Unlike the plaintiff in *Duncan*, Plaintiffs here identified Dr. Kaye and produced his expert report prior to his deposition. Therefore, Defendants here were not faced with the type of "wild goose chase" at issue in *Duncan*.[39] In addition, unlike the expert in *Sammons*, Plaintiffs identified Dr. Kaye as a causation expert and his testimony at the deposition related to causation. Furthermore, unlike *Sammons*, Dr. Kaye provided his opinion regarding premature dementia in response

---

[35] *Sammons*, 913 A.2d at 522-23.
[36] *Id.* at 529.
[37] *Id.* at 530.
[38] *Id.*
[39] *Duncan*, 2006 WL 2329378 at *6.

to questioning from Defendants' counsel, not Plaintiffs' counsel. As a result, the Court here is not concerned that Defendants suffered prejudice as a result of Dr. Kaye's premature dementia opinion. Defendants should not be able to exclude testimony provided in response to their own questioning. Therefore, Dr. Kaye's opinion regarding Mrs. Robinson's increased risk of developing premature dementia shall be admissible at trial.

## B. Plaintiffs' Motion in Limine to Exclude Testimony of Stephen Mechanick, M.D.

Plaintiffs move to exclude the testimony of Defendants' expert Dr. Stephen Mechanick on the grounds that his expert report merely critiques Plaintiffs' experts' opinions without stating his own opinions to a reasonable degree of medical certainty. Plaintiffs carry the burden of proof on causation in medical negligence cases, such that Defendants are not required to definitively prove alternative theories of causation.[40] Defendants should be able to challenge the conclusions on causation provided by Plaintiffs' experts.[41] Moreover, in addition to challenging the causation

---

[40] *See* 18 *Del. C.* § 6853(e); s*ee also Mammarella v. Evantash*, 93 A.3d 629 (Del. 2014) (concluding that the plaintiff did not meet her burden of proof to establish causation).

[41] *See e.g., Friedel v. Osunkoya*, 994 A.2d 746, 750 (Del. Super. May 7, 2010) (providing that the defendant's expert could challenge the plaintiff's expert's causation opinion even though the defendant's expert did not assert an alternative causation theory to a reasonable degree of medical probability).

17

opinions of Plaintiffs' expert, Dr. Mechanick also provided some causation opinions to a reasonable degree of medical certainty.

The Court is satisfied that Dr. Mechanick is an expert qualified by knowledge, skill, experience, training, and education. Dr. Mechanick's proposed testimony is relevant and will assist the jury in understanding the evidence and determining a fact in issue. Dr. Mechanick's opinions are based on information reasonably relied on by experts in the fields of psychiatry and neuropsychiatry. Dr. Mechanick's testimony will not create unfair prejudice or confuse or mislead the jury. Plaintiffs' concerns about Dr. Mechanick's testimony go to weight and not admissibility, and Plaintiffs can effectively cross-examine Dr. Mechanick at trial. Therefore, Dr. Mechanick's testimony is admissible.

**NOW, THEREFORE, this 8th day of May, 2018, the Court rules as follows:**

**1. Plaintiffs' Motion for Summary Judgment on Claims of Comparative Negligence and Mitigation of Damages is hereby denied without prejudice;**

**2. Regarding Defendants' Motion in Limine to Preclude Evidence of Subsequent Remedial Measures, Evidence Intended to be Protected by Peer Review Privilege, and Evidence of Expressions of Apology, Sympathy, or Compassion:**

18

a. evidence of subsequent remedial measures as addressed in the document provided to Mrs. Robinson's family is not admissible to prove negligence but may be admissible at trial for another purpose upon consideration by the Court of Rules 407 and 403;

b. evidence of subsequent remedial measures as addressed in the internal document is not admissible as it is protected by the peer review privilege;

c. evidence regarding expressions of apology, sympathy, and compassion made by Dr. Varadarajan is inadmissible under Section 4318(b);

3. Regarding Defendants' Motion in Limine to Preclude Evidence of Linda Wilkinson's Medical History and to Any Changes in Telephone Triage Procedures:

a. evidence of changes to RHOPA's telephone policy is not admissible to prove negligence but may be admissible at trial for another purpose upon consideration by the Court of Rules 407 and 403;

b. evidence regarding Linda Wilkinson's medical condition at or about October 2016 may be admissible at trial upon consideration by the Court of Rules 401 and 403;

4. Defendants' Motion in Limine addressed to the Testimony of Neil Kaye, M.D. is hereby DENIED; and

19

**5. Plaintiffs' Motion in Limine to Exclude Testimony of Stephen Mechanick, M.D. is hereby DENIED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____

**The Honorable Andrea L. Rocanelli**