COMMONWEALTH OF
PENNSYLVANIA,
Appellee

v.

**Ryan David SAFKA, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 18, 2013.

Filed June 25, 2014.

Robert E. Stewart, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Keaton Carr, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: PANELLA, J., OLSON, J., and WECHT, J.

OPINION BY PANELLA, J.

The *Frye*[1] test provides that "novel scientific evidence is admissible if the meth-

---

1. *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923).

odology that underlies the evidence has general acceptance in the relevant scientific community." *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1043–1044 (2003). Appellant, Ryan David Safka, argues, among other things, that the admission of evidence as to the speed of his vehicle based solely on the data retrieved from his vehicle's Event Data Recorder ("EDR") fails the *Frye* test. Whether EDR data may be used to establish a vehicle's speed is an issue of first impression in this Commonwealth. We hold that determining a vehicle's speed based on data recovered from an EDR is not novel scientific evidence and, thus, does not violate the *Frye* test.

The trial court set forth the relevant facts and procedural history as follows:

[Appellant], Ryan Safka, was charged by criminal information with two counts of Homicide by Vehicle (75 Pa.C.S.A. § 3732(a)); three counts of Involuntary Manslaughter (18 Pa.C.S.A. § 2504(a)); one count of Recklessly Endangering Another Person (18 Pa.C.S.A. § 2705); and several other vehicle violations including Reckless Driving (75 Pa.C.S.A. § 3736(a)); Disregard Traffic Lane (Single) (75 Pa.C.S.A. 3309(1)); Speeding (75 Pa.C.S.A. § 3362); and Driving at an Unsafe Speed (75 Pa.C.S.A. § 3361). [Appellant] elected to proceed to bench trial and executed a jury trial waiver.

Trial commenced on February 6, 2012. During the Commonwealth's case [Appellant] challenged the admissibility and weight of evidence derived from what was described as an Event Data Recorder (EDR) [2], a device in [Appellant]'s vehicle that records speed and things of that nature, much like the well[-]known "black box" does on commercial aircraft.

Testimony was presented concerning the results of the examination of the EDR. [Appellant], although aware that the Commonwealth would present such evidence, did not seek to exclude it pre-trial but, rather, made an oral Motion in Limine seeking to exclude it at the commencement of trial. The [c]ourt allowed the evidence, but, in that it was a non-jury trial, made no determination at that time as the weight that it would be afforded, stating that it would be given the appropriate weight. The parties rested on February 7 and made argument to the [c]ourt. The [c]ourt did not render a verdict, indicating that it would review the matter overnight.

After reviewing the record and conducting legal research into the admissibility and reliability of evidence obtained from an EDR, the [c]ourt determined that the record was incomplete with regard to the accuracy and reliability of evidence from an EDR. The [c]ourt advised the parties that it would reopen the record and permit both parties to present evidence concerning the EDR evidence on February 21, 2012. On February 14, 2012[,] [Appellant] filed a Petition for Habeas Corpus and Entry Verdict arguing that the [c]ourt was without power to reopen the record and that the entry of a verdict of Not Guilty was required based upon the evidence presented. The Commonwealth filed a response. The Motion was denied.

On February 21, 2012[,] the trial was reconvened and the parties were permitted to present additional evidence concerning the evidence taken from the EDR. The Commonwealth presented additional testimony from the reconstruction expert and from an expert on the

---

**2.** In this vehicle, a 2007 Dodge Caliber SXT, the EDR is known as the Airbag Control Mo-

dule.

functioning of EDR. [Appellant] presented no additional evidence. The parties made additional argument. The [c]ourt then announced it[s] verdicts, adjudging [Appellant] guilty at all counts.

On June 26, 2012, [Appellant] was sentenced to not less than ten (10) nor more than twenty-four (24) months at each of the Homicide by Vehicle Counts charged at counts 1 through 3. The sentences [were imposed to] run consecutive to one another. No further penalty was imposed at counts 4 through 6, as they merged with counts 1 through 3. The [c]ourt also imposed no further penalty on the Recklessly Endangering Another Person charge. The aggregate sentence imposed ... was not less than thirty (30) nor more than seventy-two (72) months.

[Appellant] filed a Post Sentencing Motion seeking a new trial and/or an arrest of judgment and a Post Sentence Motion seeking reconsideration of sentence. Both were denied and [Appellant] appealed.

Trial Court 1925(a) Opinion at 2–4.

Appellant presents two (2) issues for our review:

I. Whether the trial court erred in the admission of evidence as to the speed of [Appellant's] motor vehicle based solely on the information contained in the vehicle's on board computer in violation of the standard set forth in *Frye*[?]

II. Whether the trial court erred after the close of all the evidence by *sua sponte* requesting both [the] prosecution and [the] defense reopen their case for the presentation of additional evidence[?]

Appellant's Brief at 6.

■ We begin with Appellant's first claim regarding the admission of the EDR data. When reviewing evidentiary rulings by the trial court, our standard of review is narrow. "[T]he admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial court abuses its discretion." *Commonwealth v. Harrell*, 65 A.3d 420, 430 (Pa.Super.2013) (citation omitted).

The Commonwealth presented expert testimony from Richard Ruth, a retired electrical engineer who was employed by the Ford Motor Company for 33 years. *See* N.T. at 185. During his tenure with Ford, Mr. Ruth obtained accident reconstruction training from Northwestern University. *See id.* Mr. Ruth's testimony detailed the development and functionality of EDR technology. Appellant claims that this testimony fails the *Frye* test for admissibility of scientific evidence. *See* Appellant's Brief at 24.

■ The *Frye* test consists of a two-step process, which is as follows:

First, the party opposing the evidence must show that the scientific evidence is "novel" by demonstrating that there is a legitimate dispute regarding the reliability of the expert's conclusions. If the moving party has identified novel scientific evidence, then the proponent of the scientific evidence must show that the expert's methodology has general acceptance in the relevant scientific community despite the legitimate dispute.

*Commonwealth v. Foley*, 38 A.3d 882, 888 (Pa.Super.2012) (citation and internal quotation marks omitted). *See also* Pa.R.E. 702.

We must first determine whether Mr. Ruth's testimony regarding EDR technology amounts to "novel" scientific evidence. Such a determination "turns on whether there is a legitimate dispute regarding the reliability of the expert's conclusions,

which is not necessarily related to the newness of the technology used in developing the conclusions." *Foley*, 38 A.3d at 888 (citation and internal quotation marks omitted).

Appellant claims that Mr. Ruth's testimony failed to focus on the validity of the EDR technology, and instead was tantamount to that of an accident reconstruction expert. Appellant understates Mr. Ruth's testimony, as there is abundant support to conclude that EDR technology is not a novel science.[3]

The origin of EDR technology dates back to 1974. *See* N.T. at 191. In 1994, General Motors was the first manufacturer to utilize it in a production vehicle. *See id.* Other manufacturers then subsequently adopted it: Ford in 1997, Toyota in 2001, and Chrysler in 2005. The technology was originally designed to detect problems with the vehicle's safety system, specifically, the airbag deployment system. *See id.* at 192. To do so, the vehicle first monitors the two drive wheels to determine the speed of the vehicle. *See id.* at 197. This information is then transmitted to the EDR, and stored in a temporary memory known as a buffer. *See id.* The buffer continually collects and temporarily stores the last five (5) seconds of data. *See id.* In the event of an airbag deployment, the EDR writes the information from the buffer to a permanent memory that can be retrieved after a crash. *See id.*

The National Highway Traffic Safety Administration, who previously studied the use of EDRs and currently employs the technology in their crash investigations, recognizes the utility of this collected data. *See id.* at 192. Furthermore, in 1997, the National Transportation Safety Board recommended that EDRs be installed in all newly manufactured automobiles.

This evidence establishes that the technology has existed for almost 40 years, has been adopted by the major automobile manufacturers, and has been recognized as an acceptable tool used by accident reconstruction experts to determine a vehicle's speed prior to an impact. It is not novel science; it is an accepted technology.

In an effort to deflect the technology's acceptance in the automotive industry, Appellant asserts that novelty exists, as there is no Pennsylvania case law addressing the use of this technology for accident reconstruction purposes. While correct, such an omission does not prove novelty. "If this court assessed 'novelty' of scientific evidence based on its previous use in court, we would be failing to defer to scientists in assessing the reliability of scientific methods." *Foley*, 38 A.3d at 889.

We note that Florida,[4] Illinois,[5] Massachusetts,[6] and New Jersey[7] have permitted the introduction of EDR data to establish the speed of a vehicle. For the foregoing reasons, we find that there is no legitimate dispute regarding the reliability of EDR technology necessary to consider

---

3. We also disagree with Appellant's assertion that the trial court relied solely on the EDR data to establish the vehicle's speed. There was ample testimony from the Commonwealth's accident reconstruction expert who provided an opinion regarding the speed of Appellant's vehicle using established methodologies that were wholly independent from the EDR data. *See* N.T. at 61–65.

4. *Matos v. Florida*, 899 So.2d 403 (Fla.Dist.Ct. App.2005).

5. *Bachman v. General Motors Corp.*, 332 Ill. App.3d 760, 267 Ill.Dec. 125, 776 N.E.2d 262, 267 (2002).

6. *Commonwealth v. Zimmermann*, 70 Mass. App.Ct. 357, 873 N.E.2d 1215 (2007).

7. *State v. Shabazz*, 400 N.J.Super. 203, 946 A.2d 626 (2005).

it a novel science. Therefore, we deny Appellant's argument on this issue.

■ Appellant next contends the trial court erred by reopening the record *sua sponte*. In doing so, Appellant maintains the trial court improperly interjected itself into the proceedings by allowing the Commonwealth to present additional evidence regarding the accuracy and reliability of EDR technology.

■ It is within the discretion of the trial court, upon request of either side, to reopen the evidentiary record to present additional evidence prior to submission to the jury. *See Commonwealth v. Mathis*, 317 Pa.Super. 226, 463 A.2d 1167, 1171 (1983) (citation omitted). The trial court is afforded such discretion to prevent a failure or miscarriage of justice. *See id.* While permitted upon request of either party, our case law is silent regarding whether a trial court can exercise such discretion on its own accord.

The trial court described its decision to reopen the record as follows:

The evidence regarding the EDR was necessary for this [c]ourt to determine the proper weight to give that evidence. The evidence was admitted during the trial and the reopened record provided both sides with an opportunity to present additional evidence in support of their positions on its admissibility and the weight it should be afforded. The [c]ourt did this sua sponte, not on the request of either party. After reviewing the law regarding the admissibility of evidence derived from a motor vehicle EDR, the [c]ourt determined that it wanted to hear more about the science behind that device and provided both parties with the opportunity to present such evidence. The [c]ourt had agreed to hear that evidence and had not indicated what weight it would give it or whether it considered it wholly admissible.

The record was not kept open, as the defendant seems to suggest, to allow the Commonwealth to supply additional evidence without which a not guilty verdict was required. The [c]ourt did this to assure that its decision was based on a correct ruling as to the admissibility and weight of the evidence from the EDR, not to provide either party to supply "missing" evidence. In doing so, the [c]ourt did not abuse its discretion and neither party was prejudiced.

Finally, as the Commonwealth pointed out in its brief opposing [Appellant's] request that this [c]ourt not reopen the record, [Appellant] did not file a Motion to Suppress or any other Motion seeking to prevent the Commonwealth from offering data collected from the EDR into evidence. [Appellant] raised this challenge the day the evidence was to be presented. It was an issue this [c]ourt had never been presented with before. The quick research the [c]ourt's law clerk was able to do during the trial led this [c]ourt to conclude that additional evidence might be necessary for the [c]ourt to properly evaluate this evidence. The [c]ourt did not err by making sure its decisions on admissibility and weight were fully informed.

Trial Court 1925(a) Opinion at 7–8.

Relevant to our discussion is Rule 611(a) of the Pennsylvania Rules of Evidence, which describes the court's control over the presentation of evidence:

(a) **Control by the Court; Purposes.** The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:

(1) make those procedures effective for determining the truth;

(2) avoid wasting time; and

(3) protect witnesses from harassment or undue embarrassment.

Pa.R.E. 611(a)(1)-(3).

Also relevant is Rule 104, which pertains to preliminary questions of admissibility and states, "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Pa.R.E. 104(a). Rule 104 functions differently during a bench trial than a jury trial.

The second sentence of Pa.R.E. 104(a) is based on the premise that, by and large, the law of evidence is a 'child of the jury system' and that the rules of evidence need not be applied when the judge is the fact finder. The theory is that the judge should be empowered to hear any relevant evidence to resolve questions of admissibility.

Pa.R.E. 104(a), Comment.

With these considerations in mind, we address Appellant's second claim. In presenting his argument, Appellant appears to lose sight of how the timing of his objection hampered the trial court's ability to decide the evidentiary issue. Appellant was fully aware the Commonwealth planned to utilize the EDR to establish the speed of his vehicle prior to the crash. Curiously, he chose to wait until the commencement of trial to raise an oral motion *in limine,* instead of filing a formal pretrial motion. While permissible, Appellant cannot escape the consequences such a strategy presents.

By filing a pretrial motion, Appellant could have ensured the trial court would possess all of the preliminary evidence necessary to determine whether the EDR data was accurate and reliable. Instead, his strategy placed the trial court in the unenviable position of deciding an unfamiliar question of law in a short period of time.

Utilizing the discretion afforded to it by Rules 611 and 104, the trial court admitted the data extracted from the EDR, subject to a later determination of whether sufficient foundational facts establish the technology's accuracy and reliability. The Rules of Evidence explicitly endorse such a practice. *See* Pa.R.E. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.")

After both parties rested, and prior to rendering a verdict, the trial court determined that further evidence surrounding the accuracy and reliability of the EDR technology was needed. Therefore, the court reopened the record and afforded each party an opportunity to develop their position. In essence, the trial court provided itself with a forum to receive preliminary evidence on the issue, akin to a hearing on a motion *in limine*—an option that was previously precluded based on Appellant's strategy.

Accordingly, the trial court's actions were consistent with the discretion afforded to it by Rules 104 and 611. Furthermore, in exercising such discretion, the trial court actions were entirely reasonable, and were not grounded in bias, prejudice or ill will.

Judgment of sentence affirmed. Jurisdiction relinquished.

WECHT, J., files a concurring and dissenting opinion.

CONCURRING AND DISSENTING OPINION BY WECHT, J.:

I join the learned Majority's conclusion that the proffered EDR data satisfied the

*Frye*[1] test. However, I respectfully, but adamantly, disagree with the Majority's determination that the trial court was permitted to re-open the evidentiary record in this case *sua sponte*. Therefore, I respectfully dissent from that portion of the Majority's opinion.

The factual and procedural history of this case is summarized aptly by the Majority, *see* Maj. Op. at 306–07, and a full reproduction of that material is unnecessary here. However, certain events are undisputed, and are worth repeating. Appellant waived his right to a jury trial, and elected to proceed in a non-jury fashion. At the commencement of the non-jury trial, counsel for Appellant made an oral motion *in limine* seeking to preclude admission of the EDR evidence. The trial court entertained the motion, and held that the EDR evidence was admissible, but that the weight to be assigned to that evidence would be determined after the testimony related to the evidence was presented at trial. The parties then presented their respective evidence, and each party rested its case. The evidentiary record formally was closed. The trial court received closing arguments, and reserved rendering a verdict until the following day. However, rather than rendering a verdict the next day, the trial court *sua sponte* re-opened the record after conducting legal research overnight. The court concluded that additional testimony was necessary to establish the reliability and accuracy of the EDR evidence, material that not only assisted the Commonwealth in meeting its burden of proof, but also was omitted by the Commonwealth during its case-in-chief. Appellant filed a petition for *habeas corpus*, in which he argued that the trial court lacked the authority to re-open the record *sua sponte*. The trial court denied the petition. After the Commonwealth was af-forded this second chance to make its case against Appellant, the trial court found Appellant guilty of all counts.

The Majority concedes that no principle of law exists in Pennsylvania that would permit the trial court to re-open the record without a specific request from one of the parties. *See* Maj. Op. at 309. The Majority nonetheless concludes that the trial court possessed the authority to do so in this case only because of the tardiness of the presentation of Appellant's motion *in limine*, even though the Majority also admits that Appellant's tactic was "permissible." *Id.* at 310. I respectfully disagree.

The Majority cites Pennsylvania Rules of Evidence 611(a) and 104 to establish that the trial court was permitted to consider the preliminary question of the admissibility of the EDR evidence in two parts: (1) the actual admission of the evidence; and (2) the subsequent admission of foundational evidence to demonstrate the accuracy and reliability of the challenged evidence. On this point, I agree with the Majority. A trial court, particularly in a non-jury trial, may admit certain evidence and receive evidence later in the trial regarding the reliability and accuracy of that evidence. If the latter evidence properly is admitted, is credible and is sufficient to establish the former's accuracy and reliability, the former evidence properly was admitted. However, if the latter evidence is not introduced by the party offering the former evidence, then the former evidence may have to be stricken from the record. Or, if the latter evidence is introduced, but lacks credibility or sufficiency, the former evidence nonetheless may be admissible but the weight afforded to that evidence may be significantly diminished.

---

1. *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923).

Regardless of the interplay between these rules, and the multiple outcomes that may arise, these rules do not create the authority that the trial court exercised in this case. The Majority claims that these rules justified the trial court in providing "itself with a forum to receive preliminary evidence on the issue, akin to a hearing on the motion *in limine*—an option that was previously precluded based on Appellant's strategy." Maj. Op. at 310. This statement falters, both in logic and in fact.

First, it defies both law and common sense to conclude that the trial court is permitted to address a "preliminary" question of admissibility of a particular piece of evidence **after** the parties had ceased introducing evidence. The evidentiary record was closed. The onus is on the party seeking admission of the evidence to establish its admissibility during the evidentiary phase of the trial. The Commonwealth declined to do so, despite having multiple opportunities. The issue was raised before the first witness was called to testify, and discussed by the parties and the court throughout the trial. During the initial discussion on the issue, the trial court asked the Commonwealth whether it intended to call an expert witness to establish the reliability of the EDR material. The Commonwealth asserted that it only intended to call the trooper who downloaded the data, and that any issues regarding its reliability would affect the weight that the trial court would afford the evidence. Notes of Testimony ("N.T."), 2/6/2012, at 12. In other words, the Commonwealth expressly declined to call an expert to establish the reliability of the EDR data. The trial court denied Appellant's motion *in limine* but repeatedly asserted its concern over the weight to be attached to the evidence. The Commonwealth had notice of the issue, and ample opportunity to address the issue during the evidentiary phase of the trial. It did not do so. Rules 611 and 104 simply do not permit the trial court to re-open the evidentiary record **after** the parties have rested to establish a **preliminary** evidentiary question.

Second, Appellant's "permissible" strategy did not preclude the trial court, or the Commonwealth, from satisfying the evidentiary questions before the close of evidence. Albeit tardy, the Commonwealth was not prevented in any way from calling an expert to establish the reliability and accuracy of the EDR date by Appellant's motion. As noted, Appellant expressed his concern regarding the evidence before the Commonwealth presented a single witness. The Commonwealth expressly declined to present an expert during its case-in-chief. At no point did the Commonwealth or the trial court express concern that the timing of Appellant's motion hindered the ability to establish, or to rule upon, the admissibility of the EDR evidence. The Commonwealth apparently believed that the evidence that it presented sufficed for admissibility purposes. The trial court clearly disagreed. That court lacked the authority to give the Commonwealth another opportunity to present the necessary evidence after the evidentiary record had closed. The timing of Appellant's motion had nothing to do with either the Commonwealth's decisions or the trial court's belated request for additional information.

There is no denying the fact that it would have been more prudent for Appellant to have filed his motion *in limine* earlier in the proceedings. However, the motion did not prevent the Commonwealth from making volitional decisions. The motion did not preclude the Commonwealth from satisfying its evidentiary burdens. The motion did not prevent the trial court from ruling upon the admissibility of the evidence before the parties rested. Most importantly, the motion **did not** vest in the

trial court the authority to re-open an evidentiary record *sua sponte* where no such authority otherwise exists. There is no support in our case law, statutes, or rules of court to support the trial court's actions under these circumstances. Throughout the trial, the trial court suggested that it harbored significant doubt about the contested evidence, and during closing arguments, appeared to question whether the evidence proved Appellant guilty beyond a reasonable doubt. *See e.g.*, N.T. at 152–56. Rather than rule upon the evidence presented by the Commonwealth, the trial court did not provide itself a forum to address a preliminary question of admissibility, but instead gave the Commonwealth a second chance to prove its case beyond a reasonable doubt. The court had no authority to do so.

The Commonwealth could have sought leave of court to re-open the case. The Commonwealth did not do so. The Commonwealth was bound to the evidence that it presented at trial. That evidence did not establish the accuracy and reliability of the EDR evidence. The timeliness of Appellant's motion had nothing to do with this inevitable conclusion. I would hold that the trial court erred by re-opening the case without authority to do so, and I would vacate the judgment of sentence, and remand for a new trial.

I respectfully dissent.