J-S20031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ALEX STRANGE BUDD PLOWMAN | : | |
| | : | |
| Appellant | : | No. 1364 WDA 2018 |

Appeal from the Judgment of Sentence Entered August 28, 2018
In the Court of Common Pleas of Blair County
Criminal Division at No(s):  CP-07-CR-0001816-2017

BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.E.:          **FILED AUGUST 06, 2019**

Appellant, Alex Strange Budd Plowman, appeals from the judgment of sentence entered in the Blair County Court of Common Pleas, following his jury trial convictions for rape of a child, aggravated indecent assault, statutory sexual assault, indecent assault, sexual assault, endangering the welfare of a child ("EWOC"), unlawful contact with a minor, and corruption of minors.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. In 2015, Appellant began living with his girlfriend and her minor daughter, A.B.H. ("Victim"), who was approximately three years old at the time. Between late summer 2016 and June 29, 2017, Victim thrice indicated to her

_____

[1] 18 Pa.C.S.A. §§ 3121(c); 3125(a)(7); 3122.1(b); 3126(a)(7); 3124.1; 4304(a)(1); 6318(a)(1); and 6301(a)(1)(ii), respectively.

mother that Appellant had touched her vagina and butt with his hands and penis on several occasions. On June 29, 2017, Victim's mother took Victim to the hospital for examination and contacted law enforcement about the alleged sexual abuse. During the investigation into the sexual abuse allegations against Appellant, Ashley Domiano, a forensic interviewer, conducted and video recorded a forensic interview of Victim on July 25, 2017. That same day, Dr. Rachel Schwab performed a forensic medical exam on Victim.

On August 8, 2017, the Commonwealth filed a criminal complaint against Appellant. The Commonwealth filed a motion *in limine* on March 9, 2018. Through its motion, the Commonwealth sought to introduce: (i) Victim's trial testimony *via* an alternative method; (ii) statements Victim made to her mother and to Ms. Domiano during the forensic interview; and (iii) expert testimony of Ms. Domiano and Dr. Schwab. Subsequently, the Commonwealth provided Appellant notice it also sought to introduce the expert testimony of Dr. Veronique Valliere, a forensic psychologist, and a document reflecting Dr. Valliere would testify about sexual abuse victim behavior. On April 10, 2018, Appellant filed a response to the Commonwealth's motion *in limine*. In his response, Appellant made a broad request for **Frye**[2] hearings on Ms. Domiano's and Dr. Valliere's proposed expert testimony; Appellant did not elaborate upon or provide rationale for his

---

[2] **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923).

request.  Later, the Commonwealth substituted Dr. Valliere with Dr. Barbara Ziv, and provided Appellant an expert report of Dr. Ziv.  The expert reports for Dr. Valliere and Dr. Ziv were comparable and each consisted of a memorandum describing the effects of sexual victimization of children.

On April 25, 2018, the court conducted a hearing on the Commonwealth's motion *in limine*.  At the hearing, Victim's mother testified about three different conversations she had had with Victim, during which Victim reported Appellant had abused her.  Additionally, Appellant objected to the admission of the expert report of: (i) Dr. Ziv, as overly-broad; and (ii) Dr. Valliere, because the Commonwealth indicated she would not be testifying at trial.  The court admitted both reports over Appellant's objections.  Appellant also objected to Dr. Ziv's and Ms. Domiano's qualifications as expert witnesses and asked the court to conduct **Frye** hearings as to both witnesses.  Appellant generally claimed the proposed testimony of Dr. Ziv and Ms. Domiano would fail the **Frye** standard.  The court accepted the expert qualifications of both Dr. Ziv and Ms. Domiano and declined to hold a **Frye** hearing as to either witness.  The court subsequently granted the Commonwealth's motion *in limine via* an order dated April 25, 2018, and entered May 2, 2018.

Appellant proceeded to a jury trial on May 1, 2018.  On May 3, 2018, the jury convicted Appellant of two counts each of rape of a child, statutory sexual assault, sexual assault, aggravated indecent assault, indecent assault, EWOC, and one count each of unlawful contact with a minor and corruption of

minors. The court sentenced Appellant on August 31, 2018, to an aggregate term of twenty-seven (27) to fifty-four (54) years' imprisonment, plus five (5) years' probation. Additionally at sentencing, the court notified Appellant of his requirement to register and report for life as a Tier III sex offender under the Sexual Offender Registration and Notification Act ("SORNA"). On September 20, 2018, Appellant timely filed a notice of appeal. The court ordered Appellant on October 25, 2018, to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b); Appellant timely complied on October 31, 2018.

Appellant raises the following issues for our review:

> DID THE TRIAL COURT ERR[] IN PERMITTING TESTIMONY *VIA* CONTEMPORANEOUS ALTERNATE METHOD FOR VICTIM…, AS WELL AS ERRING IN THE NOTICE OF REQUIREMENTS UNDER 42 PA.C.S.A. 5985.1(B)[?]

> DID THE TRIAL COURT ERR[] IN PERMITTING THE FORENSIC INTERVIEW AND STATEMENTS PURSUANT TO 42 PA.C.S.A. § 5985.1(A)[?]

> DID THE TRIAL COURT ERR[] IN ALLOWING COMMONWEALTH EXPERT IN FORENSIC PSYCHOLOGY AND VICTIM'S RESPONSE TO SEXUAL ABUSE; FORENSIC MEDICAL EXAMINER AND FORENSIC INTERVIEWS[?]

(Appellant's Brief at 25).

The standard of review for admission of evidence is as follows: "The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." **Commonwealth v. Ballard**, 622 Pa. 177, 197-98, 80 A.3d

380, 392 (2013), *cert. denied*, 573 U.S. 940, 134 S.Ct. 2842, 189 L.Ed.2d 824 (2014).

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Goldman*, 70 A.3d 874, 878-79 (Pa.Super. 2013), *appeal denied*, 624 Pa. 672, 85 A.3d 482 (2014). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa.Super. 2012), *appeal denied*, 619 Pa. 678, 62 A.3d 379 (2013).

"Hearsay" is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Generally, hearsay testimony is inadmissible at trial. *See* Pa.R.E. 802. "The tender years exception allows for the admission of a child's out-of-court statement due to the fragile nature of young victims of sexual abuse." *Commonwealth v. Kriner*, 915 A.2d 653, 657 (Pa.Super. 2007) (quoting *Commonwealth v. Fink*, 791 A.2d 1235, 1248 (Pa.Super. 2002)) (internal quotation marks omitted). The Tender Years Exception to the hearsay rule provides:

### § 5985.1. Admissibility of certain statements

**(a)** **General rule.—**An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(1) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

(i) testifies at the proceeding; or

(ii) is unavailable as a witness.

**(a.1)** **Emotional distress.—**In order to make a finding under subsection (a)(2)(ii) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

**(a.2)** **Counsel and confrontation.—**If the court hears testimony in connection with making a finding under subsection (a)(2)(ii), all of the following apply:

(1) Except as provided in paragraph (2), the defendant, the attorney for the defendant and the attorney for the

Commonwealth or, in the case of a civil proceeding, the attorney for the plaintiff has the right to be present.

(2) If the court observes or questions the child, the court shall not permit the defendant to be present.

**(b) Notice required.**—A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S.A. § 5985.1.

"Any statement admitted under the [tender years hearsay exception] must possess sufficient indicia of reliability, as determined from the time, content, and circumstances of its making." **Commonwealth v. O'Drain**, 829 A.2d 316, 320 (Pa.Super. 2003) (citing 42 Pa.C.S.A. § 5985.1(a)). "The main consideration for determining when hearsay statements made by a child witness are sufficiently reliable is whether the child declarant was particularly likely to be telling the truth when the statement was made." **Commonwealth v. Lyons**, 833 A.2d 245, 255 (Pa.Super. 2003). Factors the court may consider when determining reliability include, but are not limited to, "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age and the lack of a motive to fabricate." **Commonwealth v. Delbridge**, 578 Pa. 641, 675, 855 A.2d 27, 47 (2003); **Lyons, supra**.

"The Tender Years Statute [also] requires that an *in camera* hearing take place to determine whether a child witness is unavailable to testify." ***Id.*** at 254 (citing 42 Pa.C.S.A § 5985(a)). Nevertheless, "prior to concluding a child witness is unavailable, a court must determine whether forcing the child to testify will result in such serious emotional distress to the child that [the child] will not be able to reasonably communicate." ***Id.***; 42 Pa.C.S.A § 5985(a.1). "To reach this determination, the court 'may' either question the child witness or hear testimony of a parent or person who has dealt with the child in a therapeutic setting." ***Id.*** at 254-55; 42 Pa.C.S.A § 5985(a.1)(1)-(2). "[T]here is no other manner, method, procedure, or definition of what constitutes unavailability." ***Kriner, supra*** at 659.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Hiram A. Carpenter, III, we conclude Appellant's first and second issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the first two questions presented. (***See*** Trial Court Opinion, filed May 2, 2018, at 2-8) (finding: **(1)** at hearing on Commonwealth's motion *in limine*, Victim's mother testified Appellant's presence would significantly impair Victim's ability to testify; Victim's mother said Victim appears nervous to point of almost being in panic if she hears reference to Appellant's name or Appellant's conduct toward Victim; Victim's mother explained she did not believe Victim could communicate effectively, or at all, if Appellant were present; that Victim

communicated without issue to forensic examiner about Appellant's actions does not mean Victim would similarly testify at trial; concerning Appellant's right of confrontation, balance of interests weighs in favor of permitting Victim to testify *via* contemporaneous alternative method; Appellant suffered no prejudice from Commonwealth's failure to provide Appellant notice before hearing of Victim's statements to her mother which Commonwealth sought to introduce; Appellant cross-examined Victim's mother at motion *in limine* hearing; **(2)** record established forensic interviewer, Ms. Domiano, had significant experience interviewing child victims of sexual abuse; Victim spoke to Ms. Domiano openly, with descriptive language in neutral environment; Ms. Domiano's questioning of Victim did not indicate Victim had been coached; many defenses Appellant may have wished to raise at trial would require introduction of Victim's statements to Ms. Domiano and her mother; introduction of Victim's statements promotes fair trial). The record supports the trial court's rationale. ***See Ballard, supra***. Accordingly, as to Appellant's issues one and two, we affirm on the basis of the trial court opinion.

In his third issue, Appellant contends Dr. Schwab's testimony was irrelevant. Appellant submits Dr. Schwab's conclusion that Victim's forensic examination "neither confirms nor rules out sexual abuse" did not tend to prove or disprove Appellant sexually abused Victim. Appellant also maintains the Commonwealth did not provide Appellant with an expert report of Dr. Ziv. Appellant claims the Commonwealth provided him, instead, a summary of the

proposed testimony of Dr. Valliere to represent Dr. Ziv's intended testimony. Appellant posits the court should have conducted a *Frye* hearing regarding Dr. Ziv's testimony. Appellant asserts 42 Pa.C.S.A. § 5920 does not obviate the need for a *Frye* hearing regarding proposed expert testimony on sexual abuse victim response. Appellant insists Dr. Ziv's testimony fails to satisfy *Frye*. Appellant concludes this Court should vacate the judgment of sentence and grant a new trial. We disagree.[3, 4]

Relevance is the threshold for admissibility of evidence. ***Commonwealth v. Cook***, 597 Pa. 572, 602, 952 A.2d 594, 612 (2008). Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Pa.R.E. 401.

_____

[3] To the extent Appellant purports to challenge the court's admission of Ms. Domiano's expert testimony, Appellant failed to include in his brief any discussion of Ms. Domiano. ***See*** Pa.R.A.P. 2119(a); ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa.Super. 2007), *appeal denied,* 596 Pa. 703, 940 A.2d 362 (2008) (stating: "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … This Court will not act as counsel and will not develop arguments on behalf of an appellant"). Therefore, Appellant's claim regarding Ms. Domiano's expert testimony is waived, and we give it no further attention.

[4] To the extent Appellant attempts to argue Section 5920 is unconstitutional under ***Frye***, Appellant's claim is waived because he raises it for the first time on appeal. ***See*** Pa.R.A.P. 302(a) (explaining general rule that issues not raised before trial court are waived and cannot be raised for first time on appeal).

"Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." **Commonwealth v. Drumheller**, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003).

Section 5920 governs the admissibility of expert testimony regarding sexual abuse victim response and behavior, and states in relevant part:

> **§ 5920.  Expert testimony in certain criminal proceedings**
>
> *    *    *
>
> **(b)  Qualifications and use of experts.—**
>
> (1)  In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.
>
> (2)  If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.
>
> (3)  The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.
>
> (4)  A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert

testimony.

42 Pa.C.S.A. § 5920(b).  Recently, this Court addressed the intersection of

*Frye* and Section 5920 in ***Commonwealth v. Cramer***, 195 A.3d 594

(Pa.Super. 2018).  This Court explained:

> When reviewing challenges to the admission of expert testimony, we leave such decisions "largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." ***Commonwealth v. Watson***, 945 A.2d 174, 176 (Pa.Super. 2008) (citation omitted).
>
> The Pennsylvania Rules of Evidence govern the admission of expert witness testimony.  Our Supreme Court has held that, pursuant to Pa.R.E. 702, Pennsylvania courts must apply the *Frye* test in determining whether to admit novel scientific evidence in a criminal trial.  ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1090-91 (Pa. 2017).
>
> The General Assembly, when enacting 42 Pa.C.S.[A.] § 5920, did not purport to address or alter the applicability of *Frye* or Pa.R.E. 702(c).  **Section 5920 only addresses the relevancy of this expert testimony, and not (i) whether the expert's conclusions are novel, and (ii) whether the methodology used to arrive at his or her conclusions is generally accepted.  Section 5920 is silent on the issue of whether the proponent of an expert witness who testifies about different responses of victims to sexual violence must first demonstrate that the expert's conclusion is not novel or whether the novel conclusion is based on "methodology [that] is generally accepted in the relevant field."**  Pa.R.E. 702(c).  **Insofar as the parties dispute whether trial courts should continue to apply *Frye* and Pa.R.E. 702 to this Section 5920 expert testimony, we hold that they do apply.  A trial court must treat an expert who testifies pursuant to Section 5920 as it treats any other expert.**  Otherwise, there is no way to ensure that an expert's opinion is based on a generally accepted methodology.  Thus, we proceed with our *Frye* analysis.

- 12 -

This Court has explained that scientific evidence is "novel" when "there is a legitimate dispute regarding the reliability of the expert's conclusions." *Commonwealth v. Safka*, 95 A.3d 304, 307 (Pa.Super. 2014) (citation and quotation omitted). To be admissible at trial, the methodology underlying the novel scientific evidence "must have gained general acceptance in the relevant scientific community." *Commonwealth v. Powell*, 171 A.3d 294, 307 (Pa.Super. 2017).

A trial court is not required to conduct a *Frye* hearing any time a party seeks to introduce scientific evidence. "Rather, a hearing is warranted only when the trial court has articulable grounds to believe that an expert witness has not applied accepted scientific methodology in a conventional fashion in reaching his or her conclusions." *Jacoby*[*, supra*] at 1091.

A party opposing the scientific evidence must demonstrate that the expert's testimony is based on novel scientific evidence, *i.e.*, "that there is a legitimate dispute regarding the reliability of the expert's conclusions." *Safka*[*, supra*] at 307. "If the moving party has identified novel scientific evidence, then the proponent of the scientific evidence must show that the expert's methodology has general acceptance in the relevant scientific community despite the legitimate dispute." *Id.* (citation and quotation omitted). *See also Jacoby*[*, supra*] at 1091; *Powell*[*, supra*] at 307 (rejecting claim that Commonwealth, the proponent of expert testimony, had the initial burden and explaining that a defendant opposing such testimony had the burden of showing the testimony was based on novel scientific evidence in order to proceed to a *Frye* hearing).

*Cramer, supra* at 605-07 (emphasis added).

In *Cramer*, this Court considered whether the trial court should have conducted a *Frye* hearing, where the defendant claimed the Commonwealth's proposed expert witness' testimony on sexual abuse victim behavior and response was not "grounded in peer-reviewed, empirical studies, was

- 13 -

scientifically unreliable, and did not rest on any empirically verified research." *Id.* at 607 (some internal quotation marks omitted). The ***Cramer*** Court determined a ***Frye*** hearing was unnecessary, because the defendant's general challenge to the proposed expert testimony did not raise "articulable grounds" that the proposed expert witness had applied scientifically unreliable methods to reach the expert's conclusions; the defendant "failed to make an initial showing that [the proposed] expert testimony was based on novel scientific evidence." ***Id.***

Instantly, the Commonwealth sought to introduce the expert testimony of, *inter alia*, Dr. Schwab, a medical examiner, and Dr. Ziv, a forensic psychologist. Prior to the motion *in limine* hearing, the Commonwealth: (i) provided Appellant an expert report for Dr. Valliere, the forensic psychology expert the Commonwealth initially intended to introduce; (ii) substituted Dr. Valliere with Dr. Ziv; and (iii) provided Appellant an expert report for Dr. Ziv. During the motion *in limine* hearing, the trial court accepted the expert reports of both Dr. Ziv and Dr. Valliere, both of which were very similar and indicated each witness would testify about sexual abuse victim response and behavior, generally. Additionally, the trial court denied Appellant's broad request for a ***Frye*** hearing regarding Dr. Ziv's proposed expert testimony, and permitted the Commonwealth to introduce Dr. Ziv's expert testimony at trial.

In its opinion, the trial court addressed its admission of the expert testimony of Dr. Schwab and Dr. Ziv, as follows:

In its motion the Commonwealth offers two expert witnesses who are intended to be called at trial. Additionally, at our hearing the Commonwealth noticed a third expert[, Dr. Ziv,] not noted in their motion in the person of a designated forensic psychologist who would provide expert testimony generally to educate the jury regarding the process of disclosure in child abuse cases and the factors impacting a child's relationship with the perpetrator. That expert would also provide education regarding victim behaviors and the related dynamics of trauma and impact of abuse. This testimony is offered neither to bolster victim credibility nor to comment on this particular case with any specificity. Rather, it is introduced to generally educate the jurors to dispel certain perceived myths and misinformation in the areas of sexual abuse generally, victim's disclosure, and victim's behaviors. …

\* \* \*

With respect to the offer of a medical examiner[, Dr. Schwab,] to testify regarding the physical examination of the child, the defense objection is stated with more specificity. Here the defense objects to the expert's proffered testimony (apparently based on the medical report) which suggests that a physical exam "neither confirms nor rules out sexual abuse".

Having considered that objection, we believe the testimony is appropriate and, in fact, represents the current state of the medical community's ability to particularize whether or not abuse has occurred. Obviously, physical findings are significant and the absence of any physical findings is appropriately noted and argued by the defense. However, to take the position that the absence of physical findings means that no abuse has occurred is to deny this [c]ourt's experience as to the limitations of physical examinations as we have observed them over twenty-nine years in other cases.

Finally, the defense objects to the newly raised offer by the Commonwealth of an expert in the field of forensic psychological expert testimony. We have reviewed the applicable law in this area and especially the decision of the Pennsylvania Supreme Court in the case of

> ***Commonwealth v. [Olivo]***, 127 A.3d 769 (2015). Based on our reading of ***[Olivo]***, we believe that this testimony is clearly admissible although it will be our intention at trial to be mindful of setting appropriate limits. As characterized in the report provided[,] this testimony is designed to be educational testimony which does not bolster...[V]ictim's credibility but rather educates the jurors generally. Accordingly, specific references to the case at issue in a situation where the expert did not interview [Victim], [Victim's] mother, or any of the principles should be (and will be) restricted to general questions. With this limitation in place, we believe this expert is appropriately offered under Pennsylvania law and, accordingly, we will permit the testimony.

\*   \*   \*

(Trial Court Opinion at 10-13). The trial court correctly determined Dr. Schwab's testimony, that Victim's physical exam "neither confirms nor rules out sexual abuse," was relevant and admissible evidence. Dr. Schwab's testimony suggested it was possible Victim suffered sexual abuse even though Victim exhibited no physical evidence of sexual abuse on her body. This testimony went to establish the likelihood Appellant sexually abused Victim, and was therefore relevant. ***See Drumheller, supra***.

We depart, however, from the trial court's rationale regarding its admission of Dr. Ziv's testimony. The trial court interpreted ***Olivo*** as providing that a ***Frye*** hearing is unnecessary for a proposed expert on sexual abuse victim response behavior, because such expert testimony is admissible under Section 5920. While Appellant's case was pending on appeal, however, this Court in ***Cramer*** held that Section 5920 does not obviate the need for a ***Frye*** hearing; Section 5920 merely provides that Section 5920 expert

- 16 -

testimony is relevant in the context of criminal allegations of sexual abuse. *See Cramer, supra* at 605-06.  The *Cramer* Court added that a *Frye* hearing on proposed Section 5920 expert testimony is necessary but **only** if the party opposing the expert witness raises articulable grounds that the expert's testimony would be inadmissible under *Frye*.  *Id.* at 606.

In the instant case, Appellant made bald claims that Dr. Ziv's testimony would fail the *Frye* standard; Appellant provided the trial court no rationale to support that conclusion.  Appellant's demand for a *Frye* hearing was inadequate, particularly in light of *Cramer*, which held a challenge to a proposed expert witness did not warrant a *Frye* hearing, if the opponent raised only general claims but failed to make an initial showing that the expert's testimony was based on novel scientific theories.  *See id.* at 607. Like the defendant in *Cramer*, Appellant first failed to provide "articulable grounds" to call Dr. Ziv's conclusions into question; instead Appellant made only a broad request for a *Frye* hearing.  *See id.*  Therefore, no *Frye* hearing on Dr. Ziv's proposed expert testimony was warranted.  *See id.*  Accordingly, we affirm.  *See Commonwealth v. Reese*, 31 A.3d 708, 727 (Pa.Super. 2011) (*en banc*) (stating we may affirm on any basis if trial court's decision was correct).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/6/2019

IN THE COURT OF COMMON PLEAS OF BLAIR COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :
                                        :
        VS.                             :CR 1816-2017
                                        :
ALEX STRANGE BUDD PLOWMAN,              :
                     DEFENDANT          :


HONORABLE HIRAM A. CARPENTER, III       SENIOR JUDGE

NICHOLE SMITH, ESQUIRE                  COUNSEL FOR COMMONWEALTH

THEODORE J. KROL, ESQUIRE               COUNSEL FOR DEFENDANT

### OPINION AND ORDER

This matter comes before the Court on the Commonwealth's Motion in Limine filed March 9, 2018. The defense response to the Commonwealth's Motion in Limine was filed on April 10, 2018. We heard the matter to a conclusion on Wednesday, April 25, 2018. All issues raised in the Motion in Limine are ripe for resolution. We will address them in the order in which they were raised by the Commonwealth in their motion.

### MOTION TO PERMIT TESTIMONY VIA CONTEMPORANEOUS ALTERNATIVE METHOD FOR VICTIM A.B.H.

In its motion, the Commonwealth proposes that this Court impose a set of conditions relative to the testimony of the alleged victim, A.B.H., whereby spectators in the room where the child would testify would be limited to essential staff, counsel, the affiant, and a comfort person for the child victim.

1

#9A



All of this is consistent as provided in 42 Pa.C.S.A. 5985 which provides for testimony by contemporaneous alternative method statutorily. At our hearing of April 25, 2018, the Commonwealth presented the testimony of the victim's mother in support of the request for testimony via alternative method. The mother testified essentially that she (the mother) was satisfied that testifying in the presence of the Defendant would, in fact, significantly impair the ability of this five-year-old child to present her testimony. Specifically, the mother testified that the child appears nervous to her if the Defendant's name or situation is raised which can approach what the mother describes as almost "panic". The mother does not believe the child can communicate effectively in a room where the Defendant is present and might, in fact, clam up and not say anything. This is before we even reach the question of this very tender aged child's ability to testify in front of the fourteen adults which comprise the jury, the judge, and a courtroom that is open to the public and additional spectators. The mother added that her daughter is "more scared" now that she is educated to the fact that the things the Defendant was doing to her were "bad things".

In response, the defense noted that notwithstanding its objection to the admission of the statement which the child made

to Ashley Damiano (her forensic interviewer) that Ms. Damiano indicated that the child's presentation in front of her was "open and articulate" and that she was able to describe the Defendant's claimed behavior toward her in considerable detail, including a drawing. (See Commonwealth's Exhibit #2). According to Ms. Damiano, the victim was talkative and without any apparent reservations. Further, the defense argued that the mother's testimony in support of the alternative method of testifying went beyond statements which the defense had received and that the defense was prejudiced by this in preparation for trial generally. This is especially true where the Commonwealth in their motion indicated the defense would be provided at or about the time of the filing of this motion on March 9, 2018 a letter to defense counsel containing the particular statements made to the mother which the Commonwealth is seeking to introduce pursuant to the Tender Years Hearsay Doctrine (See Paragraph 17 of the Motion). This letter was apparently never sent.

Further, the defense invokes the Sixth Amendment right of confrontation offering to the Court its view that under the particular circumstances of this case the Defendant's right to confront the child victim is unduly restricted by the Court employing the alternative method of contemporaneous testimony.

Having considered the arguments, we believe the Motion for Contemporaneous Alternative Method should be, and is, granted.

In so holding, we note that notwithstanding this five-year-old child's ability to recount the events as perceived by Ms. Damiano during the forensic interview, we cannot help but conclude that this interview (which occurred in July 2017) is "ancient" in terms of the development of this case. Testifying at trial for a six-year-old is a far different matter than an interview before an expert interviewer whose expertise lies in facilitating the interview and making it as easy as possible. This is exactly the opposite of a courtroom situation where the reverse would be true.

As to any perceived prejudice, while we note the additional offer of proof relative to the mother's testimony of likely trial testimony was not followed through per Paragraph 17 as noted above, the defense now has the considerable advantage of hearing the mother's actual testimony one week before trial including an opportunity to cross examine it (a much more powerful tool than receiving a letter which would simply be an offer and not necessarily limited to the contents of the letter in any event). The defense now has a proceeding of record with cross examination. We further note Attorney Krol is an extremely experienced defense attorney in our bar. With this

4

opportunity a week before trial, we do not see him as particularly disadvantaged (although we certainly do not endorse the Commonwealth's failure not to provide the information). In fairness, we acknowledge this probably happened because there was a change in the District Attorney's handling the case and the promised submission to Mr. Krol was simply "lost" in the transfer.

Finally, with respect to the right of confrontation, we are satisfied by allowing the testimony by contemporaneous alternative method when weighing the age of this child and possible traumatic impact versus the perceived difficulty of a child this age testifying in the formal situation which a courtroom represents and given defense counsel will be present with an opportunity to question the child we do not see the Defendant's rights being violated to such an extent that this motion is inappropriately granted. Simply put, balancing the competing considerations of the alternate method of testimony versus the right of confrontation we find the balance favors the contemporaneous alternative method and decidedly so.

**MOTION TO INTRODUCE FORENSIC INTERVIEW AND VICTIM A.B.H.'S STATEMENTS PURSUANT TO 42 PA.C.S.A 5985.1(A) – TENDER YEARS HEARSAY**

In this motion, the Commonwealth moves to admit the forensic interview conducted by Ashley Damiano of the Child's

5

Advocacy Center on or about July 25, 2017. That interview was recorded and the Commonwealth intends (as disclosed at our hearing of April 25, 2018) to play this interview in total for the jury. The Commonwealth also seeks to introduce A.B.H.'s statements to her mother Krista Blyler pursuant to the Tender Years Hearsay Doctrine. The Commonwealth contends all of these statements are appropriately admitted as consistent, spontaneous, relevant, made in a short period of time, and without any show of evidence of fabrication or coercion.

The defense argues in response that the Court should look closely to see if a sufficient guarantee of trustworthiness exists surrounding the circumstances under which the statements are made. This is especially true of the forensic interview.

We have heard the testimony of Ashley Damiano as well as her credentials as a facilitator of forensic interviews which children in sexual abuse cases. Her experience is founded not only in her education but perhaps more importantly in the approximately three hundred interviews she has conducted involving sexual abuse investigations. We are satisfied the statements made to the forensic examiner developed at our hearing of April 25, 2018 were made in a neutral environment. In that regard, we were impressed with the interview's observation that the child was open and willing to talk using

6

descriptive language appropriate for a child of that age. While we concede there is no absolute protection against coaching in this or any situation, Ms. Damiano testified she does speak with every child in an attempt to develop whether anyone has discussed the interview with them. In this case, she learned noting which suggested coaching. Taken in total, we believe the statements are properly admitted both as reported by the mother and the taped interview by Ms. Damiano. Accordingly, we determine they are admissible evidence in the case.

In so holding, (notwithstanding what the Court has developed to this point in support of our rulings) it seems obvious to us that within these statements also lie numerous defenses which the defense will undoubtedly wish to raise and which were, in fact, disclosed at our April 25, 2018 hearing as we listened to the cross examination. These include recantation of her claims by the child (in one conversation with the mother), questions relating to whether or not the mother believed the child, and various inconsistencies which may exist over time. None of those defenses can be developed without the presence of the statements of the case. For this reason, we believe our ruling in this matter is balanced and necessary to provide a fair trial.

**MOTION IN LIMINE PURSUANT TO COMMONWEALTH V. MINNICK**

This motion is granted as the record now stands. We ruled in this fashion for the simple reason the defense has indicated they are unaware of any instances of dishonest conduct which they intend to raise which are unrelated to the instant allegations. Should some door be opened of which this Court is unaware we would be prepared to revisit this ruling in the interest of justice but for now given the absence of any opposition by the defense in light of the fact they do not intend to raise any issues of this sort this ruling is appropriate.

**MOTION TO AMEND INFORMATION**

The Commonwealth in its motion seeks to amend two defects in the information as presently filed relating to grading. The defense has no objection to either amendment indicating on the record that the amendments appear to be appropriate with grading as provided by law so that there is no basis to contest them. Accordingly, we order presently that the charge of violating Unlawful Contact with Minor at Count 13 presently graded as a Felony of the Second Degree is amended to reflect a Felony of the First Degree. Similarly, the count of the information charging Defendant Plowman with violating Corruption of Minor at Count 14 graded as a Misdemeanor of the First Degree is amended

8

to reflect a Felony of the First Degree. As the defense raises no argument that these amendments prejudice the Defendant and are consistent with applicable law, so ordered.

## NOTICE OF EXPERT TESTIMONY

In its motion the Commonwealth offers two expert witnesses who are intended to be called at trial. Additionally, at our hearing the Commonwealth noticed a third expert not noted in their motion in the person of a designated forensic psychologist who would provide expert testimony generally to educate the jury regarding the process of disclosure in child abuse cases and the factors impacting a child's relationship with the perpetrator. That expert would also provide education regarding victim behaviors and the related dynamics of trauma and impact of abuse. This testimony is offered neither to bolster victim credibility nor to comment on this particular case with any specificity. Rather, it is introduced to generally educate the jurors to disspell certain perceived myths and misinformation in the areas of sexual abuse generally, victim's disclosure, and victim's behaviors. The defense objects to each of these experts although the arguments are different with respect to each.

As to Ashley Damiano, the defense objects to her being qualified as an expert by the Court due to her lack of what the

defense contends are the "necessary credentials" such as a specific degree in a particular field or science which would entitle her to be so qualified.

We have examined this claim with respect to Ms. Damiano's testimony and are satisfied she should be qualified as an expert although that qualification would be limited to qualifying her as an expert in facilitating a child interview for forensic purposes. In so qualifying her, we note Ms. Damiano would not be offering opinions as to the credibility of the child or matters of that nature. Instead, she would be qualified to the extent of supporting her expertise in providing a neutral environment for an interview, conducting the interview without the use of leading questions, and maintaining that neutral atmosphere during the interview conducive to obtaining disclosure from the child. Accordingly, with the limitations expressed in this opinion, she will be qualified.

With respect to the offer of a medical examiner to testify regarding the physical examination of the child, the defense objection is stated with more specificity. Here the defense objects to the expert's proffered testimony (apparently based on the medical report) which suggests that a physical exam "neither confirms nor rules out sexual abuse".

10

Having considered that objection, we believe the testimony is appropriate and, in fact, represents the current state of the medical community's ability to particularize whether or not abuse has occurred. Obviously, physical findings are significant and the absence of any physical findings is appropriately noted and argued by the defense. However, to take the position that the absence of physical findings means that no abuse has occurred is to deny this Court's experience as to the limitations of physical examinations as we have observed them over twenty-nine years in other cases.

Finally, the defense objects to the newly raised offer by the Commonwealth of an expert in the field of forensic psychological expert testimony. We have reviewed the applicable law in this area and especially the decision of the Pennsylvania Supreme Court in the case of **Commonwealth v. Olivio**, 127 A.3d 769 (2015). Based on our reading of **Olivio**, we believe that this testimony is clearly admissible although it will be our intention at trial to be mindful of setting appropriate limits. As characterized in the report provided this testimony is designed to be educational testimony which does not bolster the victim's credibility but rather educates the jurors generally. Accordingly, specific references to the case at issue in a situation where the expert did not interview the child, the

11

mother, or any of the principles should be (and will be) restricted to general questions. With this limitation in place, we believe this expert is appropriately offered under present Pennsylvania law and, accordingly, we will permit the testimony.

Having discussed all of the outstanding motions and ruled in the body of this opinion, so ordered.

BY THE COURT:

Honorable Hiram A. Carpenter, III
Senior Judge

FILED: _April 27, 2018_

ajh

12